IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGMON L. HAWKINS, | No. C 15-03502 WHA |
| Plaintiff, | |
| v. | **ORDER CERTIFYING CLASS** |
| S2VERIFY, | |
| Defendant. | |

## INTRODUCTION

This order certifies a statutory damages class for FCRA claims, appoints the named plaintiff as class representative, and appoints class counsel.

## STATEMENT

Defendant S2Verify, LLC is a consumer reporting agency that provides consumer reports to employers, landlords, and creditors. One of S2Verify's specialities is providing consumer reports for employment purposes.

On June 6, 2013, plaintiff Regmon Hawkins applied to work as a security guard for IPC Corporation, a firm specializing in providing security services to various businesses (Hawkins Decl. ¶ 3; Amd. Compl. ¶ 23). IPC then requested and obtained a consumer report regarding plaintiff from S2Verify. The report listed plaintiff's prior convictions (he has a criminal history) as well as three charges that did not result in criminal convictions and were older than seven years. Specifically, the report listed three criminal charges that listed a disposition of "No Bill by Grand Jury" with a disposition date of more than seven years before the date of the

1  report (Hawkins Decl., Exh. A). IPC allegedly denied plaintiff's employment application on the
2  basis of that report.

3      Plaintiff is a former drug addict who committed various petty theft crimes in the 1990s
4  in order to sustain his drug habit. He was convicted multiple times for theft and once for
5  criminal trespass (*id.*, Exh. A). Additionally, in January 2006, Hawkins pled guilty to child
6  abduction related to a domestic dispute. In 2009, however, this conviction was dismissed
7  pursuant to California Penal Code Section 1203.4 (*id.* at ¶ 6).

8      Plaintiff asserts that he has completely transformed himself and that he has been clean
9  and sober for more than fifteen years. He is currently employed as a supervisor at Security
10 Code 3, a security guard company where he has worked since July 2012 (*id.* at ¶¶ 6–7).

11     **1.  THE FAIR CREDIT REPORTING ACT.**

12     Under the FCRA, consumer reports may not contain information regarding "[c]ivil suits,
13 civil judgments, and records of arrest that, from date of entry, antedate the report by more than
14 seven years or until the governing statute of limitations has expired, whichever is the longer
15 period." 15 U.S.C. 1681c(a)(2). The FCRA provides certain exceptions to this prohibition,
16 however, including where a consumer report is prepared in connection with "the employment of
17 any individual at an annual salary which equals, or which may reasonably be expected to equal
18 $75,000, or more." One might have expected Congress to have included a further exception for
19 school teachers, security guards, and health-care workers, among others in sensitive positions,
20 but no such exception was included.

21     **2.  S2VERIFY'S PRACTICES.**

22     Plaintiff submits deposition testimony by S2Verify's President James Zimbardi that
23 S2Verify made exceptions to the "FCRA standards" for certain clients (Zimbardi Dep. at
24 254–55 (errors in original)):

25 > [W]e made exceptions, if you will, for approximately 16 or 17
>   clients who demonstrated either statutory, legal licensing
26 > requirements to be able to have or use that data. And so we
>   processed them as exceptions under FCRA based on our belief at
27 > that time that their requirements, and based on what they were
>   trying to accomplish on behalf of the consumer, licensed them, put
28 > the health home care worker into someone's home, give them a
>   right to that data.

United States District Court
For the Northern District of California

In particular, S2Verify made exceptions for IPC and the other companies identified in the class definition proposed by plaintiff (*id.* at 171). In March 2014, S2Verify changed its practices with respect to these identified clients and, after that point, no longer provided stale, non-conviction history in the reports (*id.* at 125, 170, 193).

### 3. CLAIMS FOR RELIEF AND PROPOSED CLASS.

Plaintiff's complaint asserts three claims against S2Verify: (1) violation of 15 U.S.C. 1681e(b) and 1681k(a) for failing to "use reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" and failing to use "strict procedures" to ensure that the public-record information reported is complete and up to date; (2) violation of 15 U.S.C. 1681c(a)(2) and (5) for reporting old charges that were dismissed and older than seven years; and (3) violation of 15 U.S.C. 1681n for acting willfully. S2Verify previously moved to strike the complaint's class allegations. An order denied the motion (Dkt. No. 22). S2Verify then moved to dismiss the claims. A subsequent order denied that motion, too (Dkt. No. 60).

Plaintiff now seeks certification of the following class:

> (1) Regmon L. Hawkins and (2) all other natural persons within the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report S2VERIFY furnished to Chase Professionals, IPC International, Inc., Foodtemps, Inc. d/b/a Foodstaff, Mississippi Gaming Commission, StaffMasters, Inc., T&T Staff Management, Inc., Tarrant Regional Water District, TRC Staffing Services, or United Refining Company, (b) from June 16, 2013 through February 28, 2014, and (c) whose report contained any public record of criminal arrest, charge, information, indictment, or other adverse item of information other than records of an actual conviction of a crime, which antedated the report by more than 7 years.
> Excluded from the class definition are any employees, officers, or directors of S2VERIFY, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

Plaintiff further seeks appointment of Regmon L. Hawkins as class representative, and appointment of the law firms of Caddell & Chapman and DHF Law, P.C. as class counsel, with Caddell & Chapman serving as lead class counsel.

3

## ANALYSIS

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) have been met. *Abdullah v. U. S. Sec. Ass., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotations omitted). Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

Rule 23 requires a court granting class certification to find (1) numerosity of the class; (2) commonality of legal or factual questions; (3) typicality of the named plaintiff's claims and defenses; and (4) adequacy of the named plaintiff to protect the interests of the class. Plaintiff in this action seeks certification of the proposed classes under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the additional finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. NUMEROSITY.

The numerosity requirement of Rule 23(a)(1) is satisfied when "joinder of all members is impracticable." The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010).

Here, plaintiff's counsel asserts that it has identified 4,457 potential class members. To identify potential class members, plaintiff's counsel conducted the following procedure. *First*, counsel identified the reports produced by S2Verify that contained criminal charges disposed of more than seven years before the date of the report. *Second,* plaintiff's counsel then narrowed the group further by performing various keyword searches of common terms indicating a

1  conviction had not been obtained, including "dismissed," "dismissal," "not guilty," and other
2  similar terms. *Third,* counsel then conducted a manual review of each of these reports and
3  identified a total of 5,360 reports that contained charges over seven years old that did not result
4  in a conviction. *Fourth*, counsel narrowed the total down to only those reports that had been
5  obtained by the nine companies identified in the proposed class definition. *Fifth*, counsel
6  eliminated reports obtained outside the class period. The resulting total is 4,457 reports
7  (Wickert Decl. ¶¶ 7–9).

   Plaintiff's counsel does not address the possibility that different companies may have
   requested different reports for the same individual such that the total number of reports exceeds
   the total number of class members. Nonetheless, plaintiffs are not required to quantify with
   precision the number of class members. *Westways World Travel, Inc. v. AMR Corp.*, 218
   F.R.D. 223, 233–34 (C.D. Cal.) (Robert J. Timlin). S2Verify is silent on whether plaintiff has
   established numerosity. This order concludes that plaintiff has satisfied the numerosity
   requirement.

   **2.    COMMONALITY.**

   A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or
   fact common to the class." Rule 23(a)(2) does not require each member in a class to have
   identical factual and legal issues surrounding their claim. To establish commonality, the claims
   must depend upon a "common contention" that is "capable of classwide resolution — which
   means that determination of its truth or falsity will resolve an issue that is central to the validity
   of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350
   (2011).

   This order concludes that common questions of law and fact exist as to all members of
   the potential class, including:

1. Whether the background reports sold by S2Verify were "consumer reports" as defined by the FCRA;
2. Whether S2Verify had a policy of providing unscreened reports that included "stale" criminal history information to certain identified clients before March 2014;

5

1  3.    Whether the FCRA allows a consumer reporting agency to make exceptions to the
2        FCRA at the request of a client;
3  4.    Whether S2Verify's violations of FCRA (if any) were willful.

It is not the presence of common questions alone that makes class certification appropriate here. A class-wide proceeding also is appropriate here because a class-wide proceeding has the capacity to "generate common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. For example, the question of whether the FCRA allows exceptions will generate a common answer, not individual answers. In addition, the question of whether the reports provided by S2Verify were "consumer reports" as defined by the FCRA is likewise susceptible to a common answer, as is the question of whether the violations of FCRA (if any) were willful where, as here, the president of the company has testified to a practice of providing exceptions to the FCRA.

The FCRA's exemption for employment at an annual salary of $75,000, or more, is not a bar to class certification. S2Verify bears the burden of proving that this exemption applies to class members. In response to a request for admission, S2Verify admitted that *none* of the clients at issue "attested, certified, or otherwise indicated to [S2Verify] that such reports were for the employment of an individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more." S2Verify has therefore admitted that it has no evidence to meet its burden of proof. As such, this order finds that this issue will *not* require individualized proof at trial.

S2Verify contends that plaintiff has not established commonality because each client had different criteria for and purposes in using the reports. This argument is unconvincing. Even if a client asked that stale non-conviction history be included in background reports, it is not clear how that would change S2Verify's obligations under the FCRA. Moreover, S2Verify has not demonstrated how each client's specific criteria is relevant to the claims of potential class members. The critical question is whether S2Verify *granted* exceptions for each identified client, not the reasons for each clients' pursuit of exceptions. Once a determination

6

has been made as to whether S2Verify had an "exception" policy with respect to each identified client, common issues predominate.

This order concludes that plaintiff has satisfied the commonality requirement.

### 3. TYPICALITY.

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)).

Plaintiff's claims are typical of the class. Like potential class members, his consumer report contained non-conviction criminal history older than seven years. And like potential class members, plaintiff's report was requested by one of the nine companies identified in the proposed class. Plaintiff therefore satisfies the typicality requirement.

S2Verify asserts that plaintiff is not typical of the class because of his "extensive criminal history" (Opp. at 14). Specifically, S2Verify argues that plaintiff is *not* typical of class members whose reports contained only non-conviction history. The typicality requirement does not hold that the representative party's claims be "substantially identical" to those of the absent class members, however. Rather it requires that the representative party's claims be "reasonably co-extensive with those of the absent members." *Hanlon*, 150 F.3d at 1020. Here, plaintiff has established his claims are "reasonably co-extensive with those of the absent members." Plaintiff has therefore established the typicality requirement.

Next, S2Verify argues that plaintiff cannot establish typicality because of the uniqueness of the security industry, which has high turnover and requires employees to hold multiple jobs to maintain forty hours of employment. Specifically, S2Verify argues that "[t]here is no evidence Plaintiff would have qualified for any employment positions with any of these other

7

Identified Clients outside of the security guard industry and vice-versa" (Opp. at 15). This argument is confusing. It is not clear how plaintiff's qualifications for employment with other identified clients has any relevance to class certification. To the extent that S2Verify is attacking plaintiff's standing to pursue his claims, this order concludes that plaintiff has established standing as discussed in more detail below.

### 4. ADEQUACY.

The adequacy requirement of Rule 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011).

Plaintiff's prior convictions present three issues for consideration with respect to his adequacy as a class representative. *First*, the prior convictions present the possibility that he could be impeached at trial by the convictions. This possibility is mitigated by the fact that the convictions are older than ten years, however, and thus would only be admissible in certain circumstances. Under FRE 609(b), a conviction older than ten years is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Plaintiff's convictions would likely *not* be admitted under this standard as his testimony is unlikely to be controverted given that there are class-wide methods of proof regarding the claims. Therefore, the possibility of impeachment from the convictions is remote.

*Second*, plaintiff's prior convictions for theft present concerns about whether he can be counted on to fulfill his fiduciary duty to the class as its representative. This order concludes that he can be counted on to do so. Plaintiff has not committed a crime within the last ten years and he has been sober for fifteen years (Hawkins Decl. ¶ 7). Moreover, crime is inherent in the problem of stale, dismissed criminal charges. *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1398 (N.D. Cal. 2014). The Court is confident plaintiff can be trusted.

*Third*, plaintiff seeks to represent a class that will include individuals who had only arrests (meaning no convictions). These individuals may have more appealing grievances than

8

plaintiff. Plaintiff's criminal history, which is arguably more severe, may also influence the jury unfavorably. Nonetheless, plaintiff's convictions are older than ten years and he has led a law-abiding life in the interim. This order therefore concludes that plaintiff has established that he will be an adequate class representative.

S2Verify argues that plaintiff is not an adequate plaintiff because he cannot establish standing. To support this argument, S2Verify cites to the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). S2Verify concedes, however, that "the Supreme Court did not definitively rule on the specific harm required to establish standing in Article III courts" in *Spokeo* (Opp. 8).

In *Spokeo*, our court of appeals concluded that the plaintiff had standing to pursue claims for violations of the FCRA. The Supreme Court remanded, concluding that our court of appeals had only considered whether the plaintiff's harm was "particularized" and not whether the harm was "concrete." The Supreme Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo,* 136 S. Ct. at 1550. The Court acknowledged, however, that "intangible" injuries can be concrete and that the "risk of real harm" can satisfy the requirement of concreteness in some cases. *Ibid.*

The harm alleged here sufficiently establishes the concreteness requirement. Here, Congress decided to restrict access to information regarding arrests older than seven years, which bestowed a degree of privacy on that information. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 764 (1989) (recognizing that the restriction of access to information can implicate privacy concerns even where the information is otherwise publicly available). Despite those restrictions, S2Verify published plaintiff's stale arrests. S2Verify thereby sent restricted information about plaintiff into the world and as such caused injury to plaintiff's privacy interest. Plaintiff's alleged injury is concrete; therefore, plaintiff has established standing.

It should be noted that the harm alleged here is in no way akin to the examples given in *Spokeo* where a procedural violation would *not* result in concrete harm. In *Spokeo*, the Supreme Court explained that, "even if a consumer reporting agency fails to provide the required notice

9

to a user of the agency's consumer information, that information may be entirely accurate." As another example, the Court explained that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." The information at issue here is not as benign as an incorrect zip code. Moreover, the violation is not merely procedural. Rather, S2Verify disclosed records of arrest that Congress has protected from disclosure, thereby intruding upon plaintiff's privacy interest.

This order concludes that plaintiff would be an adequate representative for the FCRA class under consideration. This order also finds that plaintiff's counsel of record would be adequate class counsel for the FCRA class under consideration.

### 5. RULE 23(b)(3) PREDOMINANCE AND SUPERIORITY.

Certification under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The inquiry into predominance is similar to that of commonality but "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Here, common questions of law and fact predominate over any individual issues. Plaintiff has submitted admissions by S2Verify that it maintained a practice of providing exceptions to "FCRA standards" for certain clients. The question of whether these practices violated the FCRA, and whether any such violations were willful, can be demonstrated on a class-wide basis. Common questions therefore predominate.

S2Verify asserts that plaintiff cannot establish predominance because plaintiff's report contains convictions in addition to non-convictions and because of the unique characteristics of the security field. For the reasons discussed above, these arguments are unconvincing. It is true that a determination will need to be made as to whether S2Verify made exceptions as to each identified client. But once that determination has been made, common questions predominate.

S2Verify also argues that plaintiff cannot establish commonality because the damages of class members "would be completely individualized" (Opp. at 15). At the hearing, however,

plaintiff's counsel represented that both plaintiff and the class seek only statutory damages. Damages can therefore be proven through class-wide proof.

A class action is also a superior method for resolving the disputes. The range of statutory damages under the FCRA is "not less than $100 and not more than $1,000." 15 U.S.C.A. § 1681n(a). Absent a class action, individuals would be unlikely to pursue such a relatively small claim given the costs of litigation. A class action is therefore a superior method for resolving these disputes.

*   *   *

The following statutory damages class is **CERTIFIED** under Rule 23(b)(3):

> (1) Regmon L. Hawkins and (2) all other natural persons within the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report S2VERIFY furnished to Chase Professionals, IPC International, Inc., Foodtemps, Inc. d/b/a Foodstaff, Mississippi Gaming Commission, StaffMasters, Inc., T&T Staff Management, Inc., Tarrant Regional Water District, TRC Staffing Services, or United Refining Company, (b) from June 16, 2013 through February 28, 2014, and (c) whose report contained any public record of criminal arrest, charge, information, indictment, or other adverse item of information other than records of an actual conviction of a crime, which antedated the report by more than 7 years.
>
> Excluded from the class definition are any employees, officers, or directors of S2VERIFY, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

## CONCLUSION

For all of the above-stated reasons, plaintiff's motion for class certification is **GRANTED**. The following statutory damages class is **CERTIFIED** under Rule 23(b)(3):

> (1) Regmon L. Hawkins and (2) all other natural persons within the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report S2VERIFY furnished to Chase Professionals, IPC International, Inc., Foodtemps, Inc. d/b/a Foodstaff, Mississippi Gaming Commission, StaffMasters, Inc., T&T Staff Management, Inc., Tarrant Regional Water District, TRC Staffing Services, or United Refining Company, (b) from June 16, 2013 through February 28, 2014, and (c) whose report contained any public record of criminal arrest, charge, information, indictment, or other adverse item of information other than records of an actual

11

> conviction of a crime, which antedated the report by more than 7 years.
>
> Excluded from the class definition are any employees, officers, or directors of S2VERIFY, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

These class definitions shall apply for all purposes, including settlement. Regmon Hawkins is **APPOINTED** as class representative of all plaintiff classes. Caddell & Chapman and DHF Law, P.C. are hereby **APPOINTED** as class counsel, with Caddell & Chapman to serve as lead counsel.

By **AUGUST 12 , 2016 BY NOON**, the parties shall jointly submit a proposal for class notification, with the plan to distribute notice by **SEPTEMBER 6, 2016**.

**IT IS SO ORDERED.**

Dated:  July 26, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE