Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Amy E. Tabor (State Bar No. 297660)
aet@caddellchapman.com
Benjamin C. Wickert (pro hac vice)
bcw@caddellchapman.com
Caddell & Chapman
628 East 9th Street
Houston TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Devin H. Fok (State Bar No. 256599)
devin@devinfoklaw.com
DHF Law
234 Colorado Blvd., 8th Floor
Pasadena CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO

| | |
|---|---|
| REGMON L. HAWKINS, i*ndividually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>*v.*<br><br>S2VERIFY, *a foreign limited liability company,*<br><br>*Defendant.* | Case No. 3:15-cv-03502 WHA<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:  February 9, 2017<br>Time:  8:00 a.m.<br>Place:  Courtroom 8, 19th Floor<br>Hon.   William H. Alsup |

PLEASE TAKE NOTICE that on February 9, 2017, at 8:00 a.m., in Courtroom 8 of the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff Regmon L. Hawkins, individually and on behalf of the class certified by the Court, moves the Court for an order that awards (1) attorneys' fees to Caddell & Chapman and DHF Law ("Class Counsel"), (2) expenses to Class Counsel; and (3) a service award to class representative Regmon L. Hawkins. Defendant S2Verify does not oppose any of the requested awards.

# TABLE OF CONTENTS

I. Overview ............................................................................................................................. 1

II. Factual Background .......................................................................................................... 2

    A. Motion practice ..................................................................................................... 3

    B. Discovery .............................................................................................................. 3

    C. Class mailings and other post-certification activities ........................................... 5

III. Argument/Authorities ........................................................................................................ 5

    A. The Court should award the requested attorneys' fees .......................................... 5

        1. Class Counsel's request for 25 percent of the Settlement Fund is squarely within the range of approval and is reasonable under the circumstances. .................................................................................. 6

        2. A lodestar cross-check further supports the request for an award of 25 percent of the Settlement Fund. ........................................................ 7

    B. The Court should award Class Counsel's reasonable expenses. ......................... 11

    C. Class Counsel request that Regmon L. Hawkins be awarded a modest service award in the amount of $1,000 for his time and work performed on behalf of the Class. ............................................................................................................. 13

IV. Conclusion ....................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205 (9th Cir.1986) .................................................................................. 8

*Dunford v. American Databank*,
    64 F.Supp.3d 1378 (N.D. Cal. 2014) ........................................................................ 9

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. C 07-05923 WHA, 2015 WL 2438274, at *4 (N.D. Cal. May 21, 2015) ........ 7, 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................... 6

*In re Animation Workers Antitrust Litig.*,
    No. 14-CV-4062-LHK, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) .................. 7, 9

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 6, 8, 11

*In re HPL Techs., Inc. Sec. Litig.*,
    366 F. Supp. 2d 912 (N.D. Cal. 2005) .................................................................. 8, 9

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1995) ....................................................................... 12

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................................... 7

*In re Optical Disk Drive Prod. Antitrust Litig.*,
    No. 3:10-MD-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ................... 9

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) .............................................................................. 8

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 3:14CV238(DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) .................... 14

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................................... 6-7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir.2003) ................................................................................ 8, 13

*Taylor v. W. Marine Products, Inc.*,
    No. 13-04916 WHA, 2015 WL 2452902 (N.D. Cal. May 21, 2015) ....................... 6

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) .................................................................................. 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................ 7-8, 11

*Young v. Polo Retail, LLC*,
    No. 02-cv-4546, 2007 WL 951821 (N.D. Cal. March 28, 2007) ........................................8

*Zucker v. Occidental Petroleum Corp.*,
    192 F.3d 1323 (9th Cir. 1999) ..........................................................................................6

**STATUTES**

15 U.S.C. § 1681 ........................................................................................................... 6, 12

**RULES**

FED. R. CIV. P. 23 ......................................................................................................... 6, 12

# I. OVERVIEW

The Court preliminarily approved the settlement in this case and ordered Class Counsel to file a motion for attorneys' fees by December 29, in advance of the January 26, 2017 deadline to move for final approval of the settlement. (Dkt. 103 at 4.) This motion does that, and also requests an award of expenses to Class Counsel and a modest service award to class representative Regmon Hawkins.

As the Court recognized in its preliminary approval order, the Settlement provides for a common fund of $1,090,750 (the "Settlement Fund") to be divided among the estimated 4,363 class members. (*Id.* at 2.) The Settlement does not include a claims process or otherwise require class members to take any affirmative steps to receive their payment. (*Id.* at 4.) If the Court approves the Settlement and grants Class Counsel's request for attorneys' fees and expenses and Hawkins's request for a service award, and awards expenses of settlement administration[1], the estimated award per class member will be $172. (*Id* at 2.) This amount is well within the range of statutory damages of the FCRA. (*Id.*) This is an excellent result for the Class.

Class Counsel requests an award of attorneys' fees of $272,687.50, which constitutes 25 percent of the Settlement Fund. This requested fee is fair, reasonable, and adequately compensates Class Counsel for its work on behalf of Hawkins and the Class. As the Court is aware, this case involved significant motion practice on contested legal issues and discovery disputes. Class Counsel extensively briefed those issues and prepared for and attended hearings on each of the contested motions. After that extensive briefing, and after spending hundreds of hours manually reviewing and analyzing thousands of consumer reports, Class Counsel successfully obtained

---

[1] In the Settlement, the parties agreed that expenses for notice and claims administration of American Legal Claim Services ("ALCS"), the settlement administrator appointed by the Court, would be paid out of the Settlement Fund. (Dkt. 102-1 §§ 2.19, 9.2.) Because ALCS's expenses are ongoing and will affect the ultimate amount each Class Member is paid, Class Counsel will request an award of ALCS's expenses in the motion for final approval. As of December 29, 2016, ALCS's costs of settlement administration are $5,321.70. (Ex. 1, Declaration of Steve Platt, ¶ 4.) ALCS anticipates that its total expenses of settlement administration will not exceed $20,969, the estimated figure noted in the Amended Joint Motion for Preliminary Approval. (*Id.* ¶ 5; Dkt. 102 at 6; Dkt. 102-2 at 11.) Class Counsel will submit an updated number in advance of the final approval hearing.

certification of the Class. It was not until after the Court certified the Class (in accordance with the Court's Notice (Dkt. 11)) that the parties discussed—let alone agreed upon—the Settlement. Class Counsel's time spent on the case was therefore integral to the results obtained on behalf of the Class. Nonetheless, instead of seeking its full lodestar, Class Counsel requests the "benchmark" award of 25 percent of the Settlement Fund. Although the hours devoted to the case were reasonable and necessary to the results obtained for the Class, to eliminate any concern about duplicative or unnecessary billing, Class Counsel unilaterally reduced their collective lodestar by 20 percent from $753,137.50 to $602,510. Even after that reduction, the requested fee represents only approximately 45% of Class Counsel's adjusted lodestar, effectively seeking a "negative multiplier" of approximately 0.45. This multiplier is well below those that have been widely accepted by courts within the Ninth Circuit, including this Court. Class Counsel also request that the Court award Class Counsel their reasonable expenses incurred in pursuing the case, which total $40,587.51.

Class Counsel also requests that this Court award class representative Regmon L. Hawkins a service award of $1,000. Mr. Hawkins played an active role in this case, responding to multiple sets of discovery and having his deposition taken. Early in the case, he rejected a settlement offer of $13,000 that would have paid him well more than he stands to recover here, even if the Court approves the requested service award. Mr. Hawkins's sacrifice on behalf of the Class justifies the $1,000 award.

## II. Factual Background

As the Court is well aware[2], Settlement in this case results from more than 15 months of contentious litigation, including extensive motion practice and briefing on legal issues and discovery disputes, a detailed and lengthy review of thousands of consumer reports, a successful motion for class certification, and ultimately a settlement after a full-day mediation before Magistrate Judge Corley. Ex. 2, Declaration of Michael Caddell ("Caddell Decl."), ¶ 31.

---

[2] Plaintiff has extensively set forth the background facts in its motion for class certification (Dkt. 65) and Amended Joint Motion for Class Certification (Dkt. 102.) For brevity's sake, Plaintiff incorporates those filings by reference here.

### A. Motion practice

The parties fully briefed the dispositive legal issues in the case and sought relief on a discovery dispute. (*Id.* ¶ 32). S2Verify filed a motion to strike the Plaintiff's class allegations (Dkt. 7), to which the Plaintiff responded (Dkt. 18) and S2Verify replied (Dkt. 19). After conducting a hearing, the Court denied the motion. (Dkt. 22.) S2Verify then filed a motion to dismiss certain claims (Dkt. 42), to which Plaintiff responded (Dkt. 47) and S2Verify replied (Dkt. 54). After conducting a hearing, the Court denied that motion also. (Dkt. 60.) After Plaintiff served S2Verify written discovery requests and S2Verify objected and responded, the parties met and conferred to resolve a dispute regarding the discovery, but were unable to do so. (Caddell Decl. ¶ 32.) Plaintiff filed a letter brief seeking relief from the Court (Dkt. 50). After conducting a hearing, the Court granted the relief sought by the Plaintiff, and ordered S2Verify to produce consumer reports and to produce its corporate representative for deposition. (Dkt. 57.) Following an approximately 11-month discovery period, Plaintiff filed a motion for class certification (Dkt. 65) to which S2Verify responded (Dkt. 70) and Plaintiff replied (Dkt. 73). After conducting a hearing, the Court granted the motion. (Dkt. 82.) S2Verify filed a motion for summary judgment (Dkt. 76), which it later withdrew after the parties stipulated to dismiss certain claims (Dkt. 83, 84).

### B. Discovery

In addition to the significant time spent on researching, briefing, and arguing the motions filed with the Court, Class Counsel devoted a significant amount of time and expense to discovery. (Caddell Decl. ¶ 32-33.) To even obtain the consumer reports that ultimately formed the basis of their motion for class certification, it was necessary for Class Counsel to seek relief from the Court. (*Id.* ¶ 32*;* Dkt. 50.) The Court granted the relief sought, ordering S2Verify to (1) present its corporate representative for deposition, on two occasions if Class Counsel deemed it necessary; and (2) produce the requested consumer reports. (Caddell Decl. ¶ 32; Dkt. 57.) In compliance with the Court's order, S2Verify produced more than 963,000 pages of documents and more than 100,000 consumer reports. (Caddell Decl. ¶ 32; Dkt. 65 at 5; Dkt. 65-4 ¶ 5.)

Because those reports did not contain the metadata Class Counsel had requested, there was no way to meaningfully organize the reports by search field (e.g., by consumer name, criminal charge, disposition, or disposition date). (Dkt. 65 at 5; Dkt. 65-4 ¶ 5.) Given that deficiency in S2Verify's production, Class Counsel issued a Rule 30(b)(6) deposition with subpoena *duces tecum* to Deverus, the third-party company that hosts S2V's consumer reports. (*Id.*) After Class Counsel conferred with Deverus's counsel, the parties reached an agreement whereby Deverus would produce the same consumer reports already produced by S2Verify, but with the metadata information that would allow Hawkins's counsel to search, organize, and manually review the reports. (Dkt. 65 at 5; Dkt. 65-4 ¶ 6.) Deverus produced those reports and metadata. (*See* Dkt. 65-6 ¶¶ 2–5.) Pursuant to the Court's order, Class Counsel paid for half of the costs of the production from Deverus, totaling $925. (Dkt. 57; Caddell Decl. ¶ 32.) Additionally, Class Counsel deposed S2Verify's president James Zimbardi on two separate occasions in Atlanta, Georgia, where S2Verify is based (*see id.;* Dkt. 65 at 5; Dkt. 57), and presented Regmon Hawkins for deposition. (*See* Dkt. 65 at 3-5; Dkt. 72-9.)

As described in detail in the motion for class certification (Dkt. 65), one of Class Counsel's most significant expenditures of time and expense in this case was the review, analysis, and organization of the consumer reports. (*See* Dkt. 65 at 6-7, § II(E).) Upon finally receiving the consumer reports from Deverus, Class Counsel hired the ESI processing and database hosting vendor Lexbe. (*Id.*; Caddell Decl. ¶ 33.) With the aid of the metadata provided by Deverus, Lexbe narrowed the universe of consumer reports from more than 100,000 to 29,172 that contained criminal history disposed of more than seven years before the date of the report (including convictions or guilty pleas) from June 16, 2013 to the present. (Dkt. 65 at 6; Caddell Decl. ¶ 33.) Lexbe's software allowed Class Counsel to further narrow the number of reports with search terms. (*Id.*) Lexbe continued to be involved with the case on an as-needed basis, charging hourly for its services; Class Counsel paid Lexbe $7,236.52 for its work on the case. (*Id.*) Lexbe's assistance exponentially reduced the amount of time Class Counsel needed to manually review each report. (*Id.*) Nonetheless, it was necessary for Class Counsel to perform significant, time-consuming work to manually review the reports. Class Counsel noted, for each report, whether it

contained obsolete criminal history, the number of FCRA violations, and the S2V client who purchased the report. (*See* Dkt. 65 at 6-7.)

### C. Class mailings and other post-certification activities

After it certified the class, the Court appointed ALCS as the class administrator tasked with administering direct mailing of the Rule 23(c)(2)(B) notice to class members and assisting with processing opt-outs. (Dkt. 88.) Class Counsel worked closely with ALCS in preparing the notice for mailing, providing ALCS the best-known addresses of class members so that ALCS could perform a skip trace search if necessary, and answering phone calls and email inquiries from class members. (Caddell Decl. ¶ 34.) Before the mailing went out, Class Counsel had multiple discussions with S2Verify's counsel to ensure that notice went out only to persons who were properly included in the class. (*Id.*)

On September 13, 2016, one week after ALCS mailed the Rule 23(c) notice, the parties conducted a full-day mediation before Magistrate Judge Corley. (*Id.* ¶ 35.) In advance of the mediation, Class Counsel submitted a detailed settlement conference statement to Judge Corley. (*Id.*) After the case settled at mediation, Class Counsel then drafted a formal settlement agreement and a Joint Motion for Preliminary Approval, which the parties executed and filed with the Court. (*Id.*) After the Court denied the first Joint Motion for Preliminary Approval, the parties executed an amended settlement agreement, then filed an Amended Joint Motion for Preliminary Approval, which the Court approved. (*Id.*; Dkt. 103.) Class Counsel then worked again with ALCS and S2Verify's counsel to prepare mailing of the notice of settlement approved by the Court. (Caddell Decl. ¶ 35; Dkt. 103.) ALCS advised Class Counsel that it mailed the notice of settlement on November 22, 2016. (Caddell Decl. ¶ 35.)

### III. ARGUMENT/AUTHORITIES

#### A. The Court should award the requested attorneys' fees.

In a certified class action, the Court may award "reasonable attorneys' fees . . . authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Fair Credit Reporting Act (the "FCRA"), at issue here, authorizes recovery of "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3). In deciding whether to

approve an award of attorneys' fees to Class Counsel, the Court "must ensure that such an award is 'fair, reasonable, and adequate'." *Taylor v. W. Marine Products, Inc.*, No. 13-04916 WHA, 2015 WL 2452902, at *1 (N.D. Cal. May 21, 2015) (Alsup, J.) (citing *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.2000)). The Ninth Circuit has held that in a class action, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328 (9th Cir. 1999).

With settlements involving a common fund, "the district court has discretion to use either a percentage or lodestar method" to determine the appropriate award of attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). If the court selects the percentage method, "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees." *Id.* at 1029 (internal citations omitted). This motion seeks the "benchmark award" of 25 percent, the amount Class Counsel indicated it would seek in the Amended Joint Motion for Preliminary Approval. (*See* Dkt. 102 at 10–11, citing *Hanlon,* 150 F.3d at 1029.) Class Counsel's combined lodestar figure is also relevant to the Court's analysis because the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011).

**1. Class Counsel's request for 25 percent of the Settlement Fund is squarely within the range of approval and is reasonable under the circumstances.**

Class Counsel requests the "benchmark" 25 percent award, for which the Ninth Circuit has consistently upheld approval in common fund cases. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d at 1256. Although the percentage method "may be unreasonable in some cases," i.e., when "awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case," that is clearly not the case here. *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *4 (N.D. Cal. May 21, 2015) (Alsup, J.) (internal citations omitted). Rather, the request for 25 percent is "squarely in line with the Ninth Circuit's benchmark." *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005, at *4 (N.D. Cal. Nov. 11, 2016) (Koh,

J.)

In *In re Online DVD-Rental Antitrust Litigation,* 779 F.3d 934 (9th Cir. 2015), the Ninth Circuit outlined a non-exclusive list of factors that courts may consider in determining an appropriate fee under the percentage-of-recovery method, including:

> [1] The extent to which Class Counsel "achieved exceptional results for the class," [2] whether the case was risky for Class Counsel, [3] whether counsel's performance "generated benefits beyond the cash settlement fund," [4] the market rate for the particular field of law (in some circumstances), [5] the burdens Class Counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and [6] whether the case was handled on a contingency basis.

*Id.* at 954-55 (citing *Vizcaino*, 290 F.3d at 1048-50).

Here, multiple factors weigh in favor of approving Class Counsel's 25 percent request. First, as described in detail in the Joint Motion for Preliminary Approval (and to be described in more detail at the final approval stage), the Settlement represents an excellent result for the Class. (*See* Dkt. 102 at 8-9). Class Members need not do anything to obtain a cash payment, estimated to be approximately $172—an amount exceeding the FCRA's statutory minimum of $100. (*See id.*) Second, Class Counsel took this case wholly on a contingency basis. (Caddell Decl. ¶ 49; Ex. 3, Declaration of Devin Fok ("Fok Decl."), ¶ 3.) If Class Counsel had not successfully opposed S2Verify's motions to strike and to dismiss, and then successfully obtained class certification, Hawkins and the other Class Members faced recovering nothing at all. (Caddell Decl. ¶ 49.) Likewise, of course, Class Counsel would have received nothing for their substantial devotion of time and expense to the case. (*Id.*) The risk undertaken by Class Counsel on behalf of the Class weighs in favor of approving the benchmark 25 percent fee request.

### 2. A lodestar cross-check further supports the request for an award of 25 percent of the Settlement Fund.

When courts apply the percentage method to calculate fees, they should use a "rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014); *see also In re Bluetooth,* 654 F.3d at 943 (encouraging "comparison between the lodestar amount and a reasonable percentage award"); *Vizcaino,* 290

F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"). The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941; *Staton v. Boeing Co.,* 327 F.3d 938, 965 (9th Cir.2003). Where class counsel's time investment is "minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino,* 290 F.3d at 1050. A cross-check of Class Counsel's lodestar here plainly demonstrates the reasonableness of the 25 percent fee request.

### a. Class Counsel's hourly rates are reasonable.

A reasonable rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210–11 (9th Cir.1986). Class Counsel requests that the Court award fees based on Class Counsel's current hourly rates, which reflect the market value of their skill and experience. *See Young v. Polo Retail, LLC*, No. 02-cv-4546, 2007 WL 951821, at *6 (N.D. Cal. March 28, 2007) (holding that using current hourly rates "simplifies the calculation and accounts for the time value of money in that counsel has not been paid contemporaneously with their work in this case"); *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919–20 (N.D. Cal. 2005) (courts should use attorneys' current rates, i.e., their rates at the time of the fee application, when assessing reasonableness); (Caddell Decl. ¶42; Ex. 1-A, Lodestar Chart; Fok Decl. ¶ 5.)

Class Counsel's declarations submitted in support of this motion show that the specific rates charged by each firm have been accepted in other class action cases and are comparable to rates approved by other district courts in class action litigation. (Caddell Decl. ¶¶ 12, 42-47; Fok Decl. ¶ 5; Dkt. 65-8, Declaration of Devin Fok in Support of Class Certification, ¶¶ 6—10.) Class Counsel's rates fall within the range of those charged by attorneys in California, as reflected by a 2015 National Law Journal Survey. (*See* Caddell Decl. ¶ 44; Ex. 1-C, NLJ Survey; (market rates for attorneys in California range from $200 to $1,080 for partners, and $300 to $950 for associates, at firms with 25 or fewer lawyers)); Fok Decl. ¶ 5). Moreover, courts within this district have

recently approved rates similar to Class Counsel's in complex class action cases. *See, e.g., In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (Seeborg, J.) (approving rate of $950 per hour for senior partner); *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (Koh, J.) (approving rates of between $845 and $1,200 per hour for three senior attorneys, and rates of paralegals at $290 or lower).

### b. The hours worked on the case were reasonable and necessary to the results obtained.

Class Counsel submits a chart summarizing by task the hours expended in this case, and the current billable rate of each of its attorneys and paralegals. (Ex. 1-A, Lodestar Chart; Fok Decl. ¶ 5.) As detailed above (and in previous briefing), this case involved a significant time investment in research, briefing, preparation before, and attendance at, hearings, and discovery. (*See supra* § II; Dkt. 65 at 5–7). Particularly, the extensive review, analysis, and organization of consumer reports in this case was necessary to ascertain class members; without such critical work, it would have been difficult, if not impossible, for Class Counsel to obtain class certification. (Caddell Decl. ¶ 33.)[3]

To achieve appropriate efficiencies, Class Counsel divided responsibility among the firms representing the Class. (Caddell Decl. ¶ 36.) Lead Class Counsel Caddell & Chapman undertook primary drafting responsibility for each pleading, motion, and discovery document, attended the depositions of S2Verify's corporate representative, met and conferred with opposing counsel whenever appropriate, and attended hearings and the mediation before Magistrate Judge Corley. (*Id.*) Caddell & Chapman assigned most of the work in the case to senior associate Ben Wickert, the firm attorney with the lowest billable rate. (*Id.*) Mr. Wickert had primary responsibility for the

---

[3] Class Counsel was also counsel of record before this Court in *Dunford v. American Databank,* 64 F.Supp.3d 1378 (N.D. Cal. 2014) (Alsup, J.). In that case, which also involved class-wide allegations of violations of Section 1681c of the FCRA, the Court denied class certification, in part, because Class Counsel failed to perform the "extensive homework" of manually reviewing all reports nationwide within the statute of limitations for obsolete criminal history, and determining how many violations of the FCRA were in each report. *Id.* at 1398. Class Counsel undertook that "extensive homework" in this case.

document drafting and depositions noted above, and consistently interacted with the settlement administrator. (*Id.*) Further, Mr. Wickert was the only attorney on the Class Counsel team who logged time for the extensive review and analysis of the consumer reports, in addition to his supervising the work of two Caddell & Chapman paralegals on the project. (*Id.*) Attorney Devin Fok of DHF Law regularly consulted on strategic decisions, presented Regmon Hawkins for his deposition, and assisted Caddell & Chapman in responding to written discovery. (*Id*; Fok Decl. ¶ 3.) Class Counsel sought to eliminate unnecessary duplication of effort and to use personnel with lower billing rates when appropriate, while at the same time ensuring excellent work product for the Class. (Caddell Decl. ¶ 36.)

For work performed up to and including December 28, 2016, based on the contemporaneous time records kept by Class Counsel and summarized by category in the attached declarations, Class Counsel's cumulative lodestar is $753,137.50. (*Id.* ¶ 42.) This does not include any time expended in the preparation of this motion. (*Id.*) Although the hours devoted to the case were reasonable and necessary to the results obtained for the Class, to eliminate any concern about duplicative or unnecessary billing, Class Counsel has unilaterally reduced their collective lodestar by 20 percent from $753,137.50 to $602,510. (*Id.* ¶ 43.)

### c. Class Counsel's fee request represents 45% of their reduced lodestar, a percentage that will continue to decline through the final approval hearing.

This Court has recognized that "special circumstances" may "justify a downward departure from the 25-percent benchmark." *Gutierrez v.* 2015 WL 2438274 at *8 (citing *In re Bluetooth,* 654 F.3d at 942). This is not such a case. In *Gutierrez,* this Court recognized that a 25 percent award on a common fund of $203 million would have resulted in an effective hourly rate of more than $4,900 per hour. *Id.* Instead, the Court applied the lodestar method, and awarded fees that resulted in an effective multiplier of 4.53 times class counsel's lodestar figure. *Id.* n.3. No such "special circumstances" justifying a downward departure from the benchmark award exist in this case. *Id.* In fact, the requested fee results in a "negative multiplier" of approximately 0.45 of Class Counsel's lodestar, which, as noted, has already been reduced by 20%. To date, Class Counsel's downward-adjusted lodestar figure is $602,510. (Caddell Decl. at Ex. A; Fok Decl. ¶ 5.)

Analyzing both firm's hours and rates, this adjusted combined lodestar results in a combined effective hourly rate of approximately $379 per hour. (*See id.*) Currently, the 25 percent fee award sought by Class Counsel represents 45% of the combined adjusted lodestar. (*See id.*) This number will continue to decline through the final approval hearing, with substantial tasks—including drafting and filing the motion for final approval—still requiring completion. (Caddell Decl. ¶ 42.)

### d. The parties abided by the Court's Notice of Factors to be Evaluated for Any Proposed Class Settlement, eliminating the possibility of an "early settlement."

Lastly, as the Court is aware, there was no "early settlement" in this case that might raise suspicion about Class Counsel's request for the benchmark 25 percent award, as cautioned by the Ninth Circuit in *Vizcaino*. 290 F.3d at 1050. In accordance with the Court's Notice (Dkt. 11), Class Counsel and counsel for S2Verify did not even discuss, let alone agree upon, a class-wide settlement until after the Court had certified the Class. (Caddell Decl. ¶ 37.) Indeed, before Class Counsel even had the opportunity to obtain the Settlement for the Class, they needed to defeat S2Verify's multiple motions, perform the extensive discovery necessary to ascertain the class, and obtain certification of the Class. (*Id.*)

All the factors discussed above demonstrate that the fee request of 25 percent is fair, reasonable, and appropriate in this case.

## B. The Court should award Class Counsel's reasonable expenses.

Class Counsel requests that the Court award reimbursement of their out-of-pocket expenses, all of which are reasonable and were necessary to the successful prosecution of this matter. In a common fund settlement, attorneys are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); FED. R. CIV. P. 23(h) (permitting recovery of "costs that are authorized by law or by the parties' agreement.") The FCRA authorizes recovery of "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3). Reasonable reimbursable litigation expenses include those for document production, depositions, travel, mail and postage costs. *See In re Media Vision Tech. Sec. Litig.*, 913

F. Supp. 1362, 1366 (N.D. Cal. 1995) (describing reasonable expenses as court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage, telephone/fax).

Class Counsel maintained records of their expenses on a contemporaneous basis, including expenses for filings, depositions, printing and copying, travel, meals, witness expenses, postage and shipping, computerized research, staff overtime, long-distance telephone charges, fees for class administration, and other expenses reasonably incurred in litigating this action on behalf of the Class. (Caddell Decl. ¶ 48; Ex. 1-B, Expense Chart; Fok Decl. ¶ 7.) Two of the most significant expenses incurred by Caddell & Chapman were (1) the fees of American Legal Claims Services, the class administrator appointed by the Court to administer the first mailing to the class; and (2) the fees of Lexbe, which, as described above, significantly aided in reducing the amount of manual review of consumer reports that Caddell & Chapman was required to perform. (Caddell Decl. ¶ 48; Ex. 1-B, Expense Chart.) Caddell & Chapman paid Lexbe $7,236.52 for its database hosting and e-discovery consultancy services, which exponentially reduced the amount of attorney and paralegal time necessary to manually review the consumer reports. (Ex. 1-B, Expense Chart) Caddell & Chapman paid ALCS $7,624.82 for its administration and mailing of the notice of class certification. Other significant expenses include court reporter and videographer fees for the depositions of James Zimbardi, and fees for the deposition transcript of Regmon Hawkins; travel and lodging expenses for Ben Wickert to fly twice from Houston to Atlanta for the depositions of S2Verify President James Zimbardi; the travel and lodging expenses of Mike Caddell & Cynthia Chapman to travel from Carmel, California to San Francisco and back for the five hearings conducted by the Court and the mediated settlement conference conducted by Magistrate Judge Corley; and the legal research fees for Westlaw and PACER. (Caddell Decl. ¶ 48; Ex. 1-B, Expense Chart.)

To date, Caddell & Chapman's combined expenses total $41,354.70. (Ex. 1-B, Expense Chart.) To further ensure reasonableness of expenses, Caddell & Chapman voluntarily reduced those expenses by $2,000 to $39,354.70. (Caddell Decl. ¶48.) DHF Law's recoverable expenses include the filing fee for the original complaint and travel expenses for traveling from Los Angeles

to Oakland to present Mr. Hawkins for deposition. (Fok Decl. ¶ 6.; Ex. 1-B, Expense Chart.) Those expenses total $1,232.81. (*Id.*) Class Counsel respectfully request that the Court award recovery of $40,587.51 in expenses, to be paid out of the Settlement Fund.

**C. Class Counsel request that Regmon L. Hawkins be awarded a modest service award in the amount of $1,000 for his time and work performed on behalf of the Class.**

Class Counsel request a service award in the amount of $1,000 for class representative Regmon L. Hawkins. An award to Mr. Hawkins is proper to compensate him for the time and effort he expended pursuing this litigation as well as the loyalty he demonstrated to the Class. *Staton*, 327 F.3d at 977 (holding that relevant factors in evaluating service awards include the time and effort expended and the benefit conferred on the class).

Mr. Hawkins's actions in this case justify the $1,000 award. He monitored the progress of the lawsuit, assisted in responding to the multiple sets of discovery served by S2Verify, and sat for his deposition. (Ex. 4, Declaration of Regmon L. Hawkins ("Hawkins Decl."), ¶ 3; *see also* Dkt. 65-1, declaration of Regmon L. Hawkins in support of motion for class certification.) But perhaps the best indicator of Mr. Hawkins's commitment to the Class is that in December 2015, he rejected S2Verify's $13,000 offer of judgment. (Hawkins Decl. ¶ 4.) This offer came well before Mr. Hawkins had his deposition taken and before he assisted with answering interrogatories and requests for production. (*Id.*) Had Mr. Hawkins accepted that offer, the thousands of other Class Members would not be receiving the benefits they stand to receive under the Settlement. Instead of accepting the offer and receiving a quick payday, Mr. Hawkins chose to sacrifice time, energy, and money on behalf of the Class. And by doing this, Mr. Hawkins had his name and personal details, including information about criminal convictions from more than 20 years ago, made public. (*Id.* ¶ 3.) One district court in the Fourth Circuit recently approved a $10,000 service award to a class representative for similar reasons. *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (approving service award when class representative took an active role by "participating in discovery and testifying in a deposition," by "push[ing] the case and refrain[ing] from settling his individual claim for the duration of the litigation," and by having "his name and personal details, including that a

background check disqualified him from a job, mailed and emailed to 235,000 people.")

Under the circumstances, a service award of $1,000 to Regmon Hawkins is reasonable and warranted.

## IV. CONCLUSION

Class Counsel respectfully request that this Court, upon final hearing of the fairness of the Settlement, grant its request for attorneys' fees in the amount of $272,687.50, expenses in the amount of $40,587.51, and a $1,000 service award to Regmon L. Hawkins, to be paid out of the Settlement Fund.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: December 29, 2016 | By: */s/ Michael A. Caddell* |

Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Amy E. Tabor (State Bar No. 297660)
aet@caddellchapman.com
Benjamin C. Wickert (*pro hac vice*)
bcw@caddellchapman.com
Caddell & Chapman
628 East 9th Street
Houston TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Devin H. Fok (State Bar No. 256599)
devin@devinfoklaw.com
DHF Law
234 Colorado Blvd., 8th Floor
Pasadena CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023

*Attorneys for Plaintiff*