# EXHIBIT 2

Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Amy E. Tabor (State Bar No. 297660)
aet@caddellchapman.com
Benjamin C. Wickert (admitted *pro hac vice*)
bcw@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston, TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Devin H. Fok (State Bar No. 256599)
devin@devinfoklaw.com
DHF LAW
234 Colorado Blvd., 8th Floor
Pasadena CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO

| | |
|---|---|
| REGMON L. HAWKINS, *individually and on behalf of all others similarly situated,*<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>S2VERIFY, *a foreign limited liability company,*<br><br>    *Defendant.* | Case No. 3:15-cv-03502 WHA<br><br>**DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date:  February 9, 2017<br>Time:  8:00 a.m.<br>Place:  Courtroom 8, 19th Floor<br>Hon.   William H. Alsup<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

**DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**

CASE NO. 3:15-CV-03502 WHA

Declaration of Michael A. Caddell In Support of Motion for Attorneys' Fees, Costs, and Class Representative Service Award

I, Michael A. Caddell, hereby declare as follows:

1.  I am a competent adult, over the age of eighteen, and this Declaration is based on my personal knowledge.

2.  I am lead counsel for Plaintiff and the Class in the above-styled litigation, and I am an attorney and principal of the law firm of Caddell & Chapman.

## I.  CADDELL & CHAPMAN

3.  Caddell & Chapman has an outstanding record representing primarily plaintiffs in complex litigation across the United States. I am a past co-recipient of the Public Interest Award from The Trial Lawyers for Public Justice Foundation and have been named "Impact Lawyer of the Year" by *Texas Lawyer* magazine. Caddell & Chapman's other named partner, Cynthia Chapman, who is also working on behalf of the Class in this matter, has been named by the *National Law Journal* as one of the "Top 40 Lawyers under 40 in America" and one of the "Top 50 Women Litigators in America." Both Cynthia Chapman and I have been named by *LawDragon* as two of the "500 Leading Plaintiffs' Lawyers in America."

4.  Caddell & Chapman has worked hard to attain a strong reputation for integrity and excellence[1], even while pursuing difficult and sometimes controversial cases. As Federal District Judge Royal Ferguson noted during a remand hearing in 2002, "Mr. Caddell, you and your office have a gold-plated reputation as good and thorough and thoughtful lawyers."[2] As United States Bankruptcy Judge Alan H. W. Shiff in Connecticut noted in 2003 during a contested motion to appoint Michael Caddell as Special Counsel to the Britestarr Bankruptcy Estate, "I think he's got a national reputation he's competent …. Mr. Caddell appeared before the Court and my recollection is that he comported himself very well."[3] Steven Mackey, from the Office of the United

---

[1] Texas Monthly has all named all of Caddell & Chapman's lawyers either Texas Super Lawyers or Texas Rising Stars. Both Cynthia Chapman and I have been named Texas Super Lawyers every year from 2003 to 2016.

[2] *Bellorin v. Bridgestone/Firestone, Inc.*, Cause No. P-01-CA-034, United States District Court, Western District of Texas, Pecos Division, Transcript of March 5, 2002 at 9, ll. 22–23.  Instead of burdening the Court with copies of the transcripts and orders referenced in this personal statement, copies or excerpts of these documents will be provided upon request.

[3] *In re: Britestarr Homes, Inc.*, Cause No. 02-50811, United States Bankruptcy Court, District of Connecticut,

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

States Trustee, Region 2, for the District of Connecticut commented in the same hearing, "Mr. Caddell is more than competent, he is a pugnacious bulldog and where there is [sic] grounds to make a recovery he usually does."[4] "Where the fire is the hottest people tend to get scorched once in a while, and Mr. Caddell takes cases where the fire is as hot as it gets."[5]

5.  Even while representing their clients zealously, however, Caddell & Chapman have maintained an excellent reputation as ethical lawyers. Ethics author and Professor Geoffrey Hazard noted, having "worked with lawyers" at "Caddell & Chapman … over the years in various matters," that Caddell & Chapman's lawyers "have consistently demonstrated the most proper ethical standards, including those applicable in class suit litigation," and that their conduct "exemplifies … high ethical concern."[6]

6.  Harvard Professor William Rubenstein, frequent class-action commentator and sole author of NEWBERG ON CLASS ACTIONS, characterized Caddell & Chapman as "experienced" and "skilled class action attorneys," and acknowledged me as a "nationally-known plaintiffs' attorney,"[7] when he was serving as an expert for Toshiba in another of Caddell & Chapman's numerous national class action recoveries.

7.  Prominent class-action expert Professor Geoffrey Miller, in commenting on Caddell & Chapman's work in *In Re: Trans Union Corp. Privacy Litigation*, the largest FCRA Settlement in history (where I served as Co-Lead Settlement Counsel and Cynthia Chapman was the principal author of the settlement structure), stated "[h]aving worked closely with [Caddell & Chapman], I can also attest that they are among the finest class action attorneys I have been privileged to know during my two decades of experience in this field of law. They not only possess excellent analytical

---

Transcript of June 3, 2003 at 9, 14.

[4] *Id*. At 12–13.

[5] *Id*. At 12.

[6] Hazard Declaration, filed in *White v. Experian Information Solutions, Inc.*, Case No. 05-CV-1070 DOC; In the U.S. Dist. Ct., Central Div. California, ECF Dkt. No. 605-6, Jan. 4, 2010.

[7] Rubenstein Declaration, Dec. 4, 2009, *Elihu v. Toshiba Am. Info. Sys., Inc.*, Case No. BC328556; Superior Ct. of Cal., Los Angeles County–Central District.

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

and rhetorical skills, but—more importantly—displayed remarkable qualities of judgment, imagination and persistence."

8.   Similarly, in May of 2013, in conjunction with his analysis of the work done by Caddell & Chapman in the *In Re: Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 in Chicago (where I served as Lead Counsel and Cynthia Chapman chaired the Law Committee), Professor Miller attested: "I am familiar with the Lead Counsel, Caddell & Chapman, and consider the attorneys at that firm to be among the finest class action attorneys I have encountered in more than a quarter century of work in this area," "I know Counsel to be highly ethical attorneys," and "Lead Counsel, with the assistance of the Court, performed admirably."

9.   Attorney Amy E. Tabor has also worked on behalf of the Class in this litigation. Ms. Tabor joined Caddell & Chapman in 2013. Ms. Tabor is a trial attorney with 13 years of experience, including years of experience with complex class action litigation. Ms. Tabor is a 2003 graduate of the University of Texas School of Law with high honors, where she was a member of the Texas Law Review and the Order of the Coif. She earned her B.A. from Brown University, magna cum laude, in 1995. She is licensed to practice in Texas and California and in multiple federal courts. She was named a "Texas Rising Star" by Texas Monthly magazine in 2006–2009. Ms. Tabor has been invited to speak at class action CLE seminars. In November 2015, she presented *The ABCs of Class Actions* at the National Consumer Law Center's 24th Annual Consumer Rights Litigation Conference in San Antonino. In September 2016, she presented on *FCRA Class Action Litigation: Overview and Recent Developments* as part of the National Association of Consumer Advocates' CLE webinar series.

10. Attorney Ben Wickert has also worked on behalf of the Class in this litigation. He has played a significant role by taking the organizational depositions of defendant S2Verify, drafting and responding to document discovery, briefing dispositive motions (including the motion for class certification), coordinating and supervising the review and analysis (along with Caddell & Chapman's non-lawyer personnel) of the more than 100,000 consumer reports produced in this case, briefing the settlement agreement and motion for preliminary approval, and coordinating

CASE NO. 3:15-CV-03502 WHA                    – 4 –

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

communications with opposing counsel and American Legal Claim Services, the settlement administrator appointed by the Court. Mr. Wickert joined Caddell & Chapman in September of 2015 after practicing litigation for more than seven years at a large regional firm and a boutique litigation firm in Houston. Mr. Wickert is a 2008 graduate of Vanderbilt University Law School. He was named a "Texas Rising Star" by Texas Monthly magazine in 2014, 2015, and 2016.

## II.  Caddell & Chapman's Class Action Experience

11.  Caddell & Chapman's typical role in class action litigation is as either lead or co-lead counsel (or in another leadership position). For example, past cases in which Caddell & Chapman and I have served in such a role include (1) *In re Navistar Diesel Engine Products Liability Litigation*, an MDL proceeding (Case No. MDL-2223), consolidating some 35 cases from around the country (I was Lead Counsel), in which a settlement was approved on July 2, 2013, by Federal District Judge Matthew J. Kennelly in Chicago, Illinois, which provided partial reimbursement for post-warranty engine repair costs incurred by a class of over 1 million current and former owners of Ford vehicles equipped with 6.0-liter PowerStroke diesel engines (Judge Kennelly: "the settlement can be viewed as paying roughly 50% of the full value of the class members' claims, were they to succeed" and is "clearly fair."); (2) the Polybutylene National Class Action Litigation in Tennessee, Texas, and California (*Cox v. Shell*)[8], in which over $1 billion was recovered for the class (I was Co-Lead Counsel and served throughout the settlement process as Chairman of the Board of the Consumer Plumbing Recovery Center, the entity responsible for administering the settlement, which completely replumbed over 320,000 homes across America at no cost to individual homeowners); (3) *In re: Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigations*[9] in Ohio, another $1 billion recovery for a national class (I was Special Counsel to the Plaintiffs' Steering Committee and part of the six-lawyer team which negotiated the initial $750 million class settlement with Sulzer); (4)

---

[8] Civil No. 18,844, Obion County Chancery Court, Tennessee.

[9] Cause No. 1:01-CV-9000 (MDL Docket No. 1401), United States District Court, Northern District of Ohio, Eastern Division.

*Hotchkiss v. Little Caesar Enterprises*,[10] a national class action in Texas and Michigan which resulted in a settlement valued at $350 million and the complete restructuring of the Little Caesar's franchise (I was Lead Counsel); and (5) *In re Hyundai and Kia Horsepower Litigation*,[11] a national class action in California that made available to the class roughly $125 million in cash and/or debit cards (I was Co-Lead Counsel).

12. In the last few years alone, Cynthia Chapman and I were named as Class Counsel in *Elihu, et al. v. Toshiba*, a national class action settlement in California which provided extended warranties and other relief for over 860,000 purchasers of Toshiba laptop computers, Ms. Chapman was named as Co-Lead Counsel in a national class action settlement in California involving some 80,000 purchasers of Nissan's 350Z, and I was named Lead or Co-Lead Counsel in numerous national class action settlements including, *inter alia*: (1) *Hooker v. Sirius XM Radio, Inc.*, a nationwide settlement on behalf of a class of almost 12 million consumers in a Telephone Consumer Protection Act Case, which was finally approved by Judge Arenda L. Wright Allen of the Eastern District of Virginia on December 22, 2016. The settlement creates a $35 million cash fund and provides three months of free Select Sirius XM satellite radio to all class members who do not choose to participate in the cash fund. Additionally, Sirius XM agreed to contractually require its outbound telemarketing vendors to modify their systems to ensure use of manual dialing systems that comply with the TCPA; (2) *Berry v. LexisNexis*, a nationwide settlement for injunctive relief on behalf of a class of over 200 million consumers, as well as a $13.5 million fund recovered for a smaller damages class, finally approved by Judge James R. Spencer of the Eastern District of Virginia on September 5, 2014 and affirmed by the Fourth Circuit in *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 15-1420, 2016 WL 2962583 (U.S. Oct. 3, 2016); (3) *Henderson v. Acxiom*, a $20.8 million nationwide FCRA settlement given final approval on August 7, 2015 by Judge Robert E. Payne of the Eastern

---

[10] C.A. No. 99-CI-16042, District Court of Bexar County, Texas.

[11] Case No. 02CC00287, Superior Court of Orange County, California.

District of Virginia; (4) *Zaskorn v. Am. Honda Motor Co.*, a nationwide class action settlement given final approval on June 9, 2015 by Judge Kimberly J. Mueller of the Eastern District of California; (5) *Teagle v. LexisNexis Screening Solutions, Inc.* (formerly "Choicepoint"), a nationwide FCRA Settlement given final approval on July 31, 2013, by Judge Richard Story for the Northern District of Georgia; (6) *Williams v. LexisNexis Risk Management*, a $22 million FCRA Settlement approved June 25, 2008, by Federal District Judge Robert Payne in Richmond, Virginia; (7) *Hardy v. Hartford*, a settlement providing injunctive and monetary relief to a nationwide class of Hartford insureds with respect to the payment of General Contractors' overhead and profit on property damage claims, approved by Judge Bury of the Federal District Court of Arizona on June 18, 2008; (8) *In re Trans Union Corp. Privacy Litigation*, Case 1:00-cv-04729, MDL Docket No. 1350, N.D. Illinois, at $75 million, the largest FCRA Settlement in history and one of the largest class actions in history including more than 190 million class members, where the settlement was approved by Judge Robert Gettleman on September 17, 2008; and (9) *Williams Ambulance, et al. v. Ford Motor Co.*, a settlement that obtained final approval from Federal District Judge Marcia Crone on July 2, 2009 in the Eastern District of Texas, in which the owners of some 20,000 defective ambulances—utilizing the same diesel engine at issue in the *In re Navistar* case—were eligible to obtain substantial compensation from Ford in the form of extended warranties, reimbursements for repairs, and enhanced service. My partner Cynthia Chapman also served on the Plaintiffs' Steering Committee and as a Co-Chair Liaison of the Law Committee in *In re: Medtronic, Inc., Implantable Defibrillators Products Liability Litigation*, an MDL proceeding (Case No. MDL-1726) in the United States District Court for the District of Minnesota, in which a settlement of over $100 million was approved.

13. Caddell & Chapman's current docket includes more than a dozen national and state class actions around the United States. In most cases, Caddell & Chapman is either Lead or Co-Lead Counsel. For example, Caddell & Chapman represents a putative class of former American Airlines employees in litigation against the Transport Workers Union, currently pending before the Ninth Circuit Court of Appeals. Caddell & Chapman also represents a putative class in FCRA

litigation pending in the Central District of California regarding alleged improper access to consumer credit information. Caddell & Chapman was Co-Lead Counsel in a case against two major beverage distributors, Constellation and Gallo, resulting in a settlement for a nationwide class of consumers which obtained final approval on August 31, 2012, in Los Angeles Superior Court. Caddell & Chapman was also Co-Lead Counsel for a class of bank account holders in a case against Comerica Bank before Federal District Judge James King in Miami in the *In Re: Checking Account Overdraft Litigation*, MDL No. 2036. On August 10, 2012, Caddell & Chapman, with its co-counsel, prevailed in its efforts to certify a class in that case, and was successful in defeating a subsequent Rule 23(f) interlocutory appeal to the Eleventh Circuit. A $14.58 million settlement was reached in that case, which was granted final approval by Judge King in 2014. Caddell & Chapman also was appointed Co-Lead counsel in an automotive defect case against Honda, in which a national class settlement for over 1.2 million class members was finally approved at a Final Fairness Hearing on October 28, 2013, after Caddell & Chapman achieved a contested certification of a multi-state class before Federal District Judge Margaret Morrow in Los Angeles and prevailed in a Rule 23(f) interlocutory appeal to the Ninth Circuit.

14. On November 1, 2016, Judge Richard L. Voorhees of the Western District of North Carolina granted final approval in an FCRA settlement in *Brown v. Lowes Companies, Inc.*, No. 5:13-cv-00079 (W.D.N.C.), appointing Caddell & Chapman as class counsel. On January 26, 2015, Judge John F. Walter of the Central District of California granted final approval to a FCRA settlement in *Smith v. Harbor Freight Tools USA, Inc.*, No. 2:13-cv-062620-JFW-VBK. That settlement provides more than 12,000 consumers cash or gift-card relief, at the class member's choice, for alleged violations of the FCRA. Notably, that settlement garnered no objections from class members and a lone opt-out. On January 13, 2014, Judge Jesus G. Bernal approved a settlement in a class action against Farmers Insurance, regarding alleged improper subtraction of deductibles from payments for losses exceeding policy limits to Farmers insureds in Arizona. Under the settlement, class members will receive compensation for 100% of the alleged underpayments, plus interest.

15. I also served recently as Lead Counsel in *In re Ford Motor Co. Speed Control Deactivation*

CASE NO. 3:15-CV-03502 WHA          – 8 –

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

*Switch Products Liability Litigation*, an MDL proceeding (Case No. MDL-1718) pending in the Eastern District of Michigan, where my firm took the lead role in facilitating a double-tracked, multi-party mediation that resulted in more than 100 settlements of individual cases involving vehicle fires. I am also lead or co-lead counsel in numerous other national or state class actions against, among others, Carrier IQ, Equifax, LexisNexis, S2Verify, and Volvo. Cynthia Chapman is also serving in leadership positions in these and various other state and/or national class actions around the United States.

16. While Caddell & Chapman's primary focus in the area of class actions has been as lead counsel for a putative or certified class, it has on occasion represented objectors with respect to proposed settlements that appeared abusive or defective. Since 2001, Caddell & Chapman has represented objectors in nine matters with respect to proposed settlements. In several cases, Caddell & Chapman was lead or co-lead counsel for most or all of the objectors' counsel. In *Clark v. Equifax Information Services, Inc.*,[12] concerning a proposed national FCRA settlement with the three largest credit reporting agencies, the district court refused to approve a proposed settlement after a two-day contested hearing in which I presented an expert and cross-examined several witnesses, including experts, advanced by the settlement proponents. Ultimately, after the settlement was modified with Caddell & Chapman's participation and assistance, the court approved the modified settlement and noted that "the involvement of Objectors' Counsel [which were led by Caddell & Chapman] aided in improving the final settlement terms," "the value to the class has … clearly been improved through the modifications to the Stipulation[s] of Settlement," and "Objectors' Counsel [for whom I served as Lead Counsel] … contributed to the final successful settlements."[13]

17. Similarly, in *In re Hyundai and Kia Horsepower Litigation*, Caddell & Chapman, joined

---

[12] *Franklin E. Clark, et al. v. Equifax Information Services, Inc.*, No.8:00-1218-22, United States District Court for the District of South Carolina, Anderson Division.  There were two other related cases as well, Case Nos. 8:00-1217-22 and 8:00-1219-22.

[13] *Id.*, Order of April 20, 2004, at 33 nn.34–35; 34.

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

by many firms across the country, successfully objected to a proposed coupon settlement and convinced a state district court in Texas to *withdraw* preliminary approval for that settlement.[14] Ultimately, Caddell & Chapman, as Co-Lead Counsel, obtained a vastly improved settlement which was submitted to and ultimately approved by the Superior Court in Orange County, California, Judge Stephen J. Sundvold, presiding. In approving the settlement, Judge Sundvold commented that it was "a tremendous accomplishment," "you've done a terrific job," and the settlement "is as fair and reasonable as could have been arrived at."[15] In four of the other cases in which Caddell & Chapman has represented objectors, settlement modifications were ultimately approved by the trial court and either affirmed on appeal or became final without appeal. In several of those as well, the court or opposing counsel specifically noted the contributions of the objectors led or represented by Caddell & Chapman.[16]

18.  In addition to my leadership roles in various class actions, I have also written about class action issues and have been invited to speak at class action and other CLE seminars. For example, I co-authored: "Issues Particular to Consumer Finance Class-Action Settlements," in *The Review of Banking & Financial Services*, Vol. 25, No. 9, September 2009; "Effective Approaches to Class Action Settlements," in the 14th Annual Consumer Financial Services Litigation Institute PLI Course Handbook Series Number B 1728, March 2009; and "Recent Developments in Class

---

[14] *Hermie Bundick, et al. v. Hyundai Motor Am.*, Cause No. B-168,410, 60th Judicial District of Jefferson County, Beaumont, Texas.

[15] *In re Hyundai and Kia Horsepower Litigation*, Case No. 02CC00287, Superior Court of Orange County, California, Transcript of June 16, 2004 at 33–34, 43. The court's comments were premised on a claims rate of 15% to 20%, and the final claims rate was 19.2%.

[16] See, e.g., *In re Wireless Tel. Federal Cost Recovery Fees Litig.*, Case No. MDL 1559, Master Case No. 4:03-md-01559, United States District Court for the Western District of Missouri, Western Division, Order dated July 8, 2004 at 4 (objectors represented by Michael Caddell and Ken Nelson "contributed significantly more to the settlement [than another group of objectors] and several of the suggestions [they] made were incorporated into the final settlement."); *Terri Shields, on Behalf of Herself and All Others Similarly Situated v. Bridgestone/Firestone, Inc.*, Cause No. B-170,462, 172nd Judicial District Court of Jefferson County, Texas, Plaintiff's Unopposed Motion for Entry of Order Supplementing Record, dated March 31, 2005, at 2 ("Plaintiff recognizes that the resolution of the objections to the original settlement is due to the efforts of many counsel for objectors, including, but not limited to, Mitchell A. Toups, Mike Caddell … Many objector counsel, including the aforementioned, worked constructively with class counsel and counsel for Defendants to achieve the above-stated results." Caddell & Chapman's fees in Shields were all donated to charity.

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

Action Certification and Settlement," in the 15th Annual Consumer Financial Services Litigation Institute PLI Course Handbook Series Number B-1789, February 2010, and I served as a panelist on class action issues at the 2014 ABA Annual Institute on Class Actions in Chicago and at both the 14th and 15th Annual Consumer Financial Services Institutes sponsored by the Practicing Law Institute in New York and Chicago in 2009 and 2010.

### III. CADDELL & CHAPMAN'S TRIAL EXPERIENCE

19. Caddell & Chapman's trial and other complex litigation experience, which includes more than 50 jury trials and hundreds of evidentiary hearings, is germane to the reasonableness of the attorneys' fees sought in this case. It is important for the Defendants to know that Plaintiffs' Counsel has extensive trial experience and can competently try a case. Indeed, Caddell & Chapman has tried numerous complex cases (and evidentiary hearings) against the Nation's top defense firms to a successful conclusion.

20. In February 2016, after a four-day jury trial, Caddell & Chapman obtained a unanimous jury verdict totaling $11.9 million that resulted in a judgment exceeding $3 million in Hidalgo County, Texas District Court. Caddell & Chapman's client was a block and brick manufacturer whose competitor's defamatory statements put the company out of business.

21. In 2012, Caddell & Chapman led a group of four firms pursuing False Claims Act claims in a qui tam case against DaVita, the nation's second-largest dialysis-treatment provider. During the course of the case, Caddell & Chapman took more than 40 depositions (I took more than 35), reviewed hundreds of thousands of pages of documents, briefed dozens of motions—from discovery to four dispositive motions—and handled several fiercely contested hearings, and was victorious every time. The case settled for $55 million paid to the United States and a confidential amount for attorneys' fees (which was disclosed to and approved by the U.S. Department of Justice).

22. In 2011 Caddell & Chapman settled claims against the soils engineer for a $100 million, 31-story condominium tower on South Padre Island that earned the unenviable world record for the tallest reinforced-concrete structure ever imploded when, shortly after the building was

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

"topped-out," it began differentially settling into the sand, causing columns to blow out, severe structural cracking, and enormous floor deflection.[17] The settlement occurred after Cynthia Chapman's successful appellate briefing at the Texas Supreme Court and my voir dire and jury selection at trial.[18]

23. In July 2009, I served as lead counsel for the Park Memorial Homeowners' Association against Lexington Insurance Company, seeking compensation for a 105-unit condominium project that had been declared uninhabitable by the City of Houston due to structural concerns. The case settled for a confidential amount—but only after we had successfully argued and prevailed over some 15 motions for summary judgment, *Daubert* motions, and motions in limine, and only one day before jury selection was to commence.[19]

24. In August 2008 we recovered $9 million in consent judgments after trial commenced in federal district court in McAllen, Texas, which judgments were paid in full plus interest at 8.25% following a contested evidentiary bankruptcy hearing in Jackson, Mississippi, in January 2010 (the total paid recovery was $10,084,000).[20]

25. In March 2006, Cynthia Chapman and I completed a complex, hotly contested five-week trial against ExxonMobil in which the jury awarded Caddell & Chapman's client $33.6 million[21] —ultimately, rather than pursuing an appeal, ExxonMobil settled the matter. Notably, ExxonMobil's trial counsel at the time of trial was President-Elect of the American College of Trial Lawyers.

26. In July 1999, Caddell & Chapman recovered $30 million for the families of 14

---

[17] *Ocean Tower, L.P., et al. v. Raba-Kistner Consultants, Inc. et al.*; Cause No.2008-06-3619-E; 357th District Court of Cameron County, Texas.

[18] While the terms of various settlements are confidential, public records reflect there has been a complete release of $75 million in lenders' liens on the property, and Caddell & Chapman's client retained ownership of the property after the demolished tower had been removed.

[19] *Park Memorial Condominium Ass'n, Inc. v. Lexington Ins. Co.*; Cause No. 2007-38187, 133rd Judicial District Court of Harris County, Texas.

[20] *Ezequiel Reyna, et al. v. Michael J. Miller, et al.*., Case No. M-05-006; In the United States District Court for the Southern District of Texas, McAllen Division.

[21] *Tetco v. ExxonMobil Corp.*, Cause No. 2003-Cl-04424, 73rd Judicial District of Bexar County, Texas.

Maquiladora workers killed in a bus accident in Mexico after two weeks of trial and three unsuccessful mandamus efforts at the Texas Supreme Court brought by the victims' employer, which was represented by two former Texas Supreme Court Justices and four different law firms.[22]

27. In November 1998, we obtained a $14.9 million verdict against Little Caesar Enterprises after a two-week trial in federal district court before Judge Ricardo Hinojosa, where our opponent was the lead name partner in Susman Godfrey, in a commercial case in which the pre-trial offer was zero, and defense counsel had the case on a reverse contingency (they worked for free if we recovered more than $50,000). The case settled after trial for a confidential amount.[23]

## IV.  Past Recoveries

28. Since 1996, Caddell & Chapman has obtained more than 90 recoveries valued at $1 million or more, and more than 30 recoveries that exceeded $10 million. The value of the Firm's total recoveries in that time total more than $3.0 billion. To further illustrate the depth and breadth of Caddell & Chapman's experience and versatility, the following is a list of some of the cases in which Caddell & Chapman served as lead counsel and the recoveries made in each of these cases (some of which are identified by case type and others of which are identified by case style: (1) C.A. No. MDL 2223, *In re Navistar Diesel Engine Products Liability Litigation*, multi-million dollar settlement on behalf of a nationwide class of over 1 million current and former owners of Ford vehicles equipped with 6.0-liter diesel engines; (2) C.A. No. 05-0227, *United States ex rel. Woodard v. Fresenius Medical Care*, $55 million settlement (plus confidential recovery of attorneys' fees)—*qui tam*—non-intervened case (one of the largest recoveries in history in a non-intervened *qui tam* case); (3) C.A. No. 2000-CI-17169; *Maria Dolores Rodriguez-Olvera v. Salant Corporation, et al.*, $30 million settlement during trial—negligence—forum non conveniens—choice of law—federal jurisdiction—bankruptcy—bus accident in Mexico—14 deaths—Maquiladora workers; (4) C.A. No. 2003-CI-04424; *Tetco, et al. v. ExxonMobil, et al*, $33.6 million jury verdict—breach of contract,

---

[22] *Rodriguez-Olvera v. Salant Corp.*, CA-1998-CI-17169, State District Court, Maverick County, Texas.

[23] *Anthony R. Alvarez v. Little Caesar Enters.*, C.A. No.-95-245; United States District Court for the Southern District of Texas, McAllen Division.

Declaration of Michael A. Caddell In Support of Motion for Attorneys' Fees, Costs, and Class Representative Service Award

fraud; (5) C.A. No.—95-245; *Anthony R. Alvarez, et al. v. Little Caesar Enterprises, Inc., et al.*, $14.9 million jury verdict—breach of contract, tortious interference—restaurant franchisee versus national franchisor; (6) No. 95-27280; *Douglas E. Moore & Toyota Town, Inc. v. Gulf States Toyota, Inc.*, *Toyota Motor Sales, U.S.A., Inc., Jerry Pyle, & John Bishop*, $7.5 million verdict—fraud, breach of contract/franchise agreement—automobile dealership; (7) $23.4 million—product liability—*forum non conveniens*; (8) No. 93-062030; *Thomas E. Meadors, et al. v. Gen. Motors, et al.*, $7 million—product liability—motor vehicle—death, personal injury; (9) *Sierra Club v. Crown Central Petroleum*, $2.5 million—first private citizen suit in Texas under Clean Air Act; settlement achieved after successful appeal to Fifth Circuit Court of Appeals; (10) *PB/Class*, $1.091 billion—national class action—products liability—DTPA—polybutylene pipe and fittings; (10) *Dow Chemical Co., et al v. Miller Pipeline Services*, successfully defended Miller Pipeline Services Co. at jury trial against a $7 million suit filed by Dow Chemical Co. and Dow Pipeline Co. that alleged price-fixing, patent misuse and attempted monopolization; (12) $14.0 million—breach of fiduciary duty and legal malpractice—major New York law firm; (13) $15.7 million—industrial accident—injured workers; (14) $78.4 million subordination of secured debt plus $3.8 million in payments—special counsel to bankruptcy trustee—fraud, lender liability, equitable subordination—conspiracy—international bank; (15) $18.2 million debt/claims withdrawn and released plus $500,00 payment—special counsel to bankruptcy trustee—breach of contract, bailment, theft—oil terminalling facility; (16) $20 million subordination of secured debt plus payments totaling $1.0 million—special counsel to bankruptcy trustee—fraud, lender liability, breach of fiduciary duty, director's liability, D&O coverage—foreign bank, director, D&O insurer; (17) $1.7 million—national class action—price fixing conspiracy—metal building insulation industry; (18) $22.5 million subordination of secured debt plus $8.0 million payment—breach of fiduciary duty, director's liability—oil company; (19) $107.5 million subordination of secured debt plus $2.5 million payment—fraud, lender liability—conspiracy—foreign banks; (20) $2.0 million—product liability—helicopter crash—Mexico; (21) $8.0 million elimination of priority debt plus 40% of Texas corporation—national class action—securities fraud, breach of fiduciary duty; (22) $2.6

million—trade secrets—commercial defamation; (23) $5 million—toxic tort—sulphur dioxide, asbestos; (24) $13.1 million-products liability—DTPA—1500 homes—polybutylene pipe and fittings; (25) $6.25 million—product liability—motor vehicle—single death; (26) $2.85 million—breach of contract—account mismanagement—national banks; (27) $4.3 million—commercial litigation—intellectual property—fraud, trade secrets, misappropriation; (28) $12.1 million—national class action—consumer fraud; (29) $22.5 million—insurance bad faith—CGL policy; (30) $7 million—insurance bad faith—crime bond; (31) $12 million—insurance bad faith—CGL policies—(underlying case: toxic exposure); (32) $5 million—insurance bad faith—CGL policies—(underlying case: toxic exposure); (33) $10.0 million—breach of fiduciary duty, director's liability, family trusts; (34) $5.1 million—trucking accident; (35) $2.125 million—toxic exposure—2,4-d, dioxins; (36) $5.05 million (including $1.05 million in post-judgment interest) after $4.0 million jury verdict upheld on appeal—closed head injury; (37) $3.5 million—trucking accident; (38) $6 million—toxic exposure—chlordane; (39) $2.5 million—national class action—consumer fraud; (40) $4.15 million—product liability—vehicle fire; (41) $1.5 million—Trident submarine base—government contracts claim; (42) $4 million settlement one day after $6.25 million jury verdict—commercial litigation—deceptive trade practices; and (43) $3.25 million claim successfully defended at trial—take-nothing judgment entered—$600,000 judgment awarded firm's client on counterclaim—commercial litigation—lender liability.

## V.   *PRO BONO* LITIGATION

29. Cynthia Chapman and I are also proud of our pro bono litigation efforts, including class litigation. For example, on a *pro bono* basis, Caddell & Chapman represented, as Lead Counsel for a coalition of public interest groups, Hurricanes Katrina and Rita victims in a national class action lawsuit against the Federal Emergency Management Agency (FEMA). The lawsuit, in federal district court in Houston, alleged that FEMA's mishandling of its housing assistance programs violated federal laws and regulations. In a contested evidentiary hearing involving several witnesses, other lawyers from Caddell & Chapman and I persuaded the court to issue a preliminary injunction against FEMA compelling the agency to provide assistance with hurricane victims' utilities as well

as base rent. In what lawyers from the Public Interest Law Project of Oakland, California, termed "a significant victory for evacuees," the district court found a "clear entitlement" that FEMA was required to provide assistance with utilities under applicable statutes and regulations, and FEMA's failure to comply with these mandates endangered the victims' ability to remain in livable housing. While the district court's injunction was subsequently overturned by the Fifth Circuit Court of Appeals, FEMA made several concessions to the Hurricane victims in the interim, essentially conceding the relief sought by the lawsuit, as noted by Houston's then-Mayor, Bill White, who stated that Caddell & Chapman "was of tremendous help to the Katrina evacuees in battling with FEMA."[24]

30. For further information concerning our firm's experience and expertise, the Court is referred to our website (www.caddellchapman.com).

## VI. This Litigation

31. This case was filed by Caddell & Chapman's co-counsel Devin Fok of DHF Law on June 16, 2015, in Alameda County Superior Court, styled *Regmon L. Hawkins v. S2Verify, et al.,* No. RG15774306. S2Verify removed the case on July 29, 2015. The case involved more than 15 months of contentious litigation, including extensive motion practice and briefing on legal issues and discovery disputes, a significant review of thousands of consumer reports, a successful motion for class certification, and ultimately a settlement after a full-day mediation before Magistrate Judge Corley. The contested briefing in this case included S2Verify's motion to strike class allegations, S2Verify's motion to dismiss, a letter brief to the court requesting that S2Verify produce consumer reports and present its corporate representative for deposition, a motion for class certification, and S2Verify's motion for summary judgment (which it later withdrew pursuant to a stipulation).

32. In addition to the significant time spent on researching, briefing, and arguing the motions filed with the Court, Caddell & Chapman (along with Mr. Fok) devoted a significant amount of time and expense to discovery. To even obtain the consumer reports that ultimately

---

[24] October 22, 2009 email from Mayor Bill White to Michael A. Caddell and Houston City Attorney Arturo Michel.

Declaration of Michael A. Caddell In Support of Motion for Attorneys' Fees, Costs, and Class Representative Service Award

formed the basis of their motion for class certification, it was necessary for us to seek relief from the Court. After Caddell & Chapman served S2Verify written discovery requests and S2Verify objected and responded, the parties met and conferred to resolve a dispute regarding the discovery, but were unable to do so. Caddell & Chapman filed a letter brief seeking discovery relief from the Court, which the Court granted, ordering S2Verify to (1) present its corporate representative for deposition, on two occasions if Class Counsel deemed it necessary; and (2) produce the requested consumer reports. In compliance with the Court's order, S2Verify produced more than 963,000 pages of documents and more than 100,000 consumer reports. Pursuant to the Court's order, Caddell & Chapman ultimately paid $925 in costs of production of those consumer reports. Also pursuant to the Court's order, Caddell & Chapman twice took the deposition of S2Verify's president James Zimbardi in Atlanta, Georgia, where S2Verify is based.

33. After receiving the consumer reports, Caddell & Chapman hired the ESI processing and database hosting vendor Lexbe to assist with the organization and storage of the reports. Lexbe narrowed the universe of consumer reports from more than 100,000 to 29,172 that contained criminal history disposed of more than seven years before the date of the report (including convictions or guilty pleas) from June 16, 2013 to the present. Lexbe's software allowed us to further narrow the number of reports with search terms. Lexbe continued to be involved with the case on an as-needed basis, charging hourly for its services; Caddell & Chapman paid Lexbe $7,236.52 for its work on the case. Lexbe's assistance exponentially reduced the amount of time Class Counsel needed to manually review each report. Even with Lexbe's significant help, it was necessary for us to perform significant, time-consuming work to manually review the reports. Class Counsel noted, for each report, whether it contained obsolete criminal history, the number of FCRA violations, and the S2V client that purchased the report. The extensive review, analysis, and organization of consumer reports in this case allowed Caddell & Chapman to ascertain class members; without such extensive work, it would have been difficult, if not impossible, to obtain class certification.

34. Caddell & Chapman has worked closely with American Legal Claim Services

("ALCS"), the court-appointed class administrator. With regard to the first mailing sent to class members in this case (notifying class members that a class had been certified), Caddell & Chapman helped ALCS prepare the notice for mailing, provide ALCS a list of the best-known addresses of class members so that ALCS could perform a skip trace search if necessary, and answered phone calls and email inquiries from individual class members. Before that mailing went out, Caddell & Chapman had multiple discussions with S2Verify's counsel to ensure that notice went out only to persons who were properly included in the class.

35. On September 13, 2016, one week after ALCS mailed the initial Rule 23(c) notice, the parties conducted a full-day mediation before Magistrate Judge Corley. In advance of the mediation, we submitted a detailed settlement conference statement to Judge Corley. After the case settled at mediation, Caddell & Chapman drafted a formal settlement agreement and a Joint Motion for Preliminary Approval, which the parties executed and filed with the Court. After the Court denied the first Joint Motion for Preliminary Approval, the parties executed an amended settlement agreement, then filed an Amended Joint Motion for Preliminary Approval, which the Court approved.  Caddell & Chapman then worked again with ALCS and S2Verify's counsel to prepare mailing of the notice of settlement approved by the Court. ALCS advised that it mailed the notice of settlement on November 22, 2016.

36. To achieve appropriate efficiencies, Caddell & Chapman divided responsibility between itself and DHF Law.  Caddell & Chapman undertook primary drafting responsibility for each pleading, motion, and discovery document, took the depositions of S2Verify's corporate representative, met and conferred with opposing counsel whenever appropriate, and attended hearings and the mediation before Magistrate Judge Corley. Caddell & Chapman assigned most of the work in the case to senior associate Ben Wickert, the firm attorney with the lowest billable rate. Mr. Wickert had primary responsibility for the document drafting and depositions noted above, and consistently interacted with the settlement administrator. Further, Mr. Wickert was the only attorney who logged time for the extensive review and analysis of the consumer reports, in addition to his supervising the work of two Caddell & Chapman paralegals on the project. Mr. Fok regularly

consulted on strategic decisions, presented Regmon Hawkins for his deposition, and assisted Caddell & Chapman in responding to written discovery. Class Counsel sought to eliminate unnecessary duplication of effort and to use personnel with lower billing rates when appropriate, while at the same time ensuring excellent work product for the Class.

37. In accordance with the Court's Notice (Dkt. 11), Caddell & Chapman did not discuss class-wide settlement with S2Verify's counsel – let alone agree upon it – until after the Court had certified the class. And so, before Caddell & Chapman even had the opportunity to obtain the Settlement for the Class, it needed to defeat S2Verify's multiple legal motions, perform the extensive discovery necessary to ascertain the class, and obtain certification of the class.

## VII. THE SETTLEMENT ACHIEVED

38. The parties' Amended Settlement Agreement dated October 20, 2016 (the "Settlement") resulted from good-faith, contentious, arm's-length settlement negotiations before the Honorable Jacqueline Scott Corley.

39. The Settlement creates a common fund of $1,090,750. Class members do not need to do anything to obtain a cash payment. If the Court approves our request for attorneys' fees and expenses, a $1,000 service award to lead plaintiff Regmon Hawkins, and approves payment to class administrator ALCS, we estimate that the payment to each of the 4,363 class members will be approximately $172—an amount exceeding the FCRA's statutory minimum of $100.

40. Especially given the complexity of this litigation and the significant risks and delay that the Class would face if the relevant claims were to proceed to trial, I believe that the Settlement represents an excellent result for the class.

## VIII. CADDELL & CHAPMAN'S LODESTAR AND EXPENSES

41. Caddell & Chapman contemporaneously tracked our time expended working for the Class in this matter, as is our normal practice. To avoid overbilling for simple tasks that required little time to complete, all time was billed in increments of one-tenth of an hour.

42. Based on these contemporaneous time records, my staff created a detailed spreadsheet summary (attached as Exhibit A) showing Caddell & Chapman's lodestar for work performed as of

December 28, 2016, totaling $732,602.50. My staff incorporated into the chart the lodestar information provided by co-counsel DHF Law which, as of December 28, 2016, totaled $20,535.00. The spreadsheet summarizes the time by categories reflecting the major tasks performed in the case. My staff assigned each lawyer or paralegal's time for each day to the most appropriate category based on contemporaneous detailed descriptions of the work performed. In some instances, a single time description included work falling within more than one category. In those instances, the entry was assigned to the category that best fit the description. The procedure sought to ensure there was no double counting of hours and that the total time expended exactly matches our contemporaneous time records. Based on that summary, Class Counsel's total lodestar through that date is $753,137.50. This does not include any time expended in preparation of the motion for attorneys' fees. Substantial tasks—including drafting and filing the motion for final approval—still need to be completed before the final approval hearing. Should the Court wish to review Class Counsel's individual time entries, Class Counsel will submit them.

43. While Caddell & Chapman and its co-counsel DHF Law took great measures to avoid duplicative billing and believe the hours logged were reasonable and necessary, to eliminate any concern regarding duplicative or unnecessary billing, Class Counsel has agreed to unilaterally reduce its collective lodestar by 20 percent, from $753,137.50 to $602,510. Even after that reduction, the requested fee award of $272,687.50 still constitutes less than half of the reduced lodestar, or a "negative" multiplier of approximately 0.45.

44. Caddell & Chapman's current rates, which were used for purposes of calculating the lodestar here, are based on prevailing fees for national class-action work and have been most recently approved in *Brown v. Lowe's*, No. 5:13-cv-00079 (W.D.N.C. November 1, 2016) (Dkt. 173). Caddell & Chapman's attorney rates fall within the range of those charged by attorneys in California, as reflected by a 2015 National Law Journal Survey (attached as Exhibit C, as cited in *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (Dkt. 1963-2) (Seeborg, J.)).

45. While Caddell & Chapman generally works on a contingent-fee basis, we do

occasionally accept hourly fee engagements in commercial matters. When we do so, we charge our hourly fee-paying clients the same hourly rates used as the basis of this lodestar application. Indeed, all of Caddell & Chapman's lawyers are currently being paid their hourly rates in a complex matter involving a major pharmaceutical company.  The fact that clients paying by the hour pay the same rates for our time and expertise further confirms that these rates are reasonable and in line with the market for counsel of comparable skill and experience.

46. Caddell & Chapman's historical rates have been approved in numerous courts. On August 4, 2015, Judge Robert E. Payne approved our fee request, based on Caddell & Chapman's then-current rates. *See* Order, *Henderson v. Acxiom Risk Mitigation*, No. 3:12-cv-589 (E.D. Va. 2015) (Dkt. 116). On September 5, 2014, in an FCRA settlement in which the fee was in-part lodestar based, Senior District Judge James Spencer similarly approved Caddell & Chapman's then-current rates. *See* Order Granting Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Service Awards, *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 3:11-cv-754 (E.D. Va. 2014) (Dkt. 129); *see also Berry* Dkt. 101-1 ¶ 55 (listing Caddell & Chapman's billing rates).) In December 2012, after resolving a high profile and complicated *qui tam* action (*United States of America, ex. rel. Ivey Woodard v. DaVita Inc.*, United States District Court for the Eastern District of Texas, Civil Case No. 1:05-CV-00227-MAC-ZJH), the Department of Justice approved attorneys' fees that were based on Caddell & Chapman's then-current rates. In fact, the Department of Justice approved the entire requested fee, which was based on the following rates: Michael Caddell $875; Cynthia Chapman $675; Cory Fein $650; Dana Levy $500; Craig Marchiando $425; Aron Gregg $450; Kathy Kersh $250; Sylvia Z. Vargas $250.  Caddell & Chapman's current rates were also approved in *Danny R. Teagle, et al. v. LexisNexis Screening Solutions, Inc.*, United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action No. 11-cv-01280 (Michael Caddell $875; Cynthia Chapman $675; Craig Marchiando $425; Kathy Kersh $250).

47. Caddell & Chapman's historical rates for attorneys and staff were also approved in the following cases: *In re Navistar 6.0L Diesel Engine Products Liability Litig.*, No. 1:11-cv-02496

(Michael Caddell $750; Cynthia Chapman $650; Cory Fein $625; Amy Tabor $450; Dana Levy $500; Clay Morton $370); *Weltonia Harris v. U.S. Physical Therapy, Inc.*, United States District Court, District of Nevada, Civil Action No. 2:10cv1508-JCM-VCF (Michael Caddell $750; Cynthia Chapman $650; Cory Fein $625; Craig Marchiando $425; Kathy Kersh $250); *Bradford L. Jackson v. Metscheck, Inc. and First Communities Management, Inc.*, United States District for the Northern District of Georgia, Atlanta Division, Civil Action No. 1:11-CV-2735 (Michael Caddell $750; Cynthia Chapman $650; Cory Fein $625; Amy Tabor $450; Craig Marchiando $425; Kathy Kersh $250); and *Mark Zeller v. E&J Gallo Winery and Constellation Brands, Inc.*, Superior Court of the State of California, for the County of Los Angeles (Central Civil West), Case No. BC432711 (Michael Caddell $750; Cynthia Chapman $650; Cory Fein $625; Craig Marchiando $425; Aron Gregg $400; Kathy Kersh $250; John Dessalet $250).

48. Caddell & Chapman kept records of expenses on a contemporaneous basis, including expenses for filings, depositions, printing and copying, travel, meals, witness expenses, postage and shipping, computerized research, staff overtime, long-distance telephone charges, and other expenses reasonably incurred in litigating this action on behalf of the Class. Attached as Exhibit B is a chart summarizing those expenses incurred through December 28, 2016. Two of the most significant expenses incurred by Caddell & Chapman were (1) the fees of American Legal Claims Services, the class administrator appointed by the Court to administer the first mailing (the notice of class certification) to the class;[25] and (2) the fees of Lexbe, which, as described above, significantly aided in reducing the amount of manual review of consumer reports that Caddell & Chapman was required to perform. Other significant expenses include court reporter and videographer fees for the depositions of James Zimbardi, and fees for the deposition transcript of Regmon Hawkins; travel and lodging expenses for Ben Wickert to fly twice from Houston to Atlanta and back for the depositions of S2Verify President James Zimbardi; the travel and lodging

---

[25] Caddell & Chapman did not incur expenses for ALCS's services in mailing the settlement notice, and therefore does not seek reimbursement of those expenses. Under the parties' settlement agreement, those fees will be reimbursed separately from the Settlement Fund as "Notice and Administration Expenses." (Dkt. 102-1 §§ 2.19, 9.2.)

expenses of Mike Caddell & Cynthia Chapman to travel to and from Carmel, California to San Francisco for the five hearings conducted by the Court and the mediated settlement conference conducted by Magistrate Judge Corley; and the legal research fees for Westlaw and PACER.  These expenses were tracked on a contemporaneous basis, as is our normal practice, and none have been reimbursed. Based on these records, Caddell & Chapman incurred reasonable expenses of litigation totaling $41,354.70. To further ensure the reasonableness of our expenses, we have voluntarily reduced these expenses by $2,000 to $39,354.70. The chart attached as Exhibit B also incorporates the expenses incurred by Caddell & Chapman's co-counsel DHF Law, which as of December 28, 2016, total $1,232.81.

49. The time spent on this matter kept Caddell & Chapman from taking on other work.  In contingent fee cases, the customary award is generally 40% of the result obtained. Caddell & Chapman, as is customary for its other class action cases, took this representation on a wholly contingent basis. If Caddell & Chapman had not successfully opposed S2Verify's motions to strike and to dismiss, and then successfully obtained class certification, Mr. Hawkins and the other Class Members faced the substantial possibility of recovering nothing at all. Likewise, of course, Caddell & Chapman would have received nothing for our substantial devotion of time and expense to the case.

50. Based upon my experience with other class action matters and given my Firm's lead role in this litigation, I believe that the time expended by Caddell & Chapman in connection with this litigation, when compared to the result achieved for the Class, is reasonable in amount and was necessary to ensure the successful relief obtained on behalf of the Class.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Dated: December 29, 2016          */s/ Michael A. Caddell*
                                  Michael A. Caddell

DECLARATION OF MICHAEL A. CADDELL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD