Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Amy E. Tabor (State Bar No. 297660)
aet@caddellchapman.com
Benjamin C. Wickert (admitted *pro hac vice*)
bcw@caddellchapman.com
Caddell & Chapman
628 East 9th Street
Houston, TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Devin H. Fok (State Bar No. 256599)
devin@devinfoklaw.com
DHF Law
234 Colorado Blvd., 8th Floor
Pasadena CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO

| | |
|---|---|
| REGMON L. HAWKINS, i*ndividually and on behalf of all others similarly situated*,<br><br>*Plaintiff,*<br><br>*v.*<br><br>S2VERIFY, *a foreign limited liability company,*<br><br>*Defendant.* | Case No. 3:15-cv-03502 WHA<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Date: February 6, 2017<br>Time: Noon<br>Place: Courtroom 8, 19th Floor<br>Hon. William H. Alsup<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

Case No. 3:15-cv-03502 WHA

PLEASE TAKE NOTICE that on February 6, 2017 at noon in Courtroom 8 of the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff Regmon L. Hawkins, on behalf of the class certified by the Court, moves the Court for an order of final approval of the class action settlement reached by the parties. Defendant S2Verify is unopposed to this motion.

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Summary of the Litigation and Proposed Settlement .......................................................... 2

III. Argument and Authorities ................................................................................................ 6

    A. The Court balances a non-exhaustive list of factors when determining whether the Settlement should be finally approved. .................................................. 6

    B. ALCS, with the assistance of Class Counsel, has carried out the notice plan preliminarily approved by the Court. ................................................................. 6

    C. The Settlement is fair, reasonable, and adequate, and the Court should approve it. ............................................................................................................... 8

        1. The Settlement is entitled to a presumption of fairness. ............................ 8

        2. The Settlement provides Class Members a cash award within the range of recoverable damages under the FCRA. ......................................... 8

        3. The parties reached the Settlement after the Court certified a litigation class, fact discovery had concluded, and the parties had extensively briefed legal issues. ............................................................... 9

        4. The risk of taking the case to trial favors approval of the Settlement. ...... 10

        5. The experience and views of Class Counsel favors approval of the Settlement. ................................................................................................ 10

        6. No Attorneys General objected to the Settlement. .................................. 11

        7. Class Members' positive reaction supports final approval of the Settlement. ................................................................................................ 11

IV. Conclusion ................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Akaosugi v. Benihana Nat. Corp.*,
  No. C 11-01272 WHA, 2013 WL 269083 (N.D. Cal. Jan. 24, 2013) .................................. 6

*Bayat v. Bank of the W.*,
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ................................. 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .................................................................................................. 6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 6, 12

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*,
  473 F. App'x 716 (9th Cir. 2012) ........................................................................................ 11

*Hayes v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ............................... 7

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*,
  No. C 13-05197 WHA, 2015 WL 2406966 (N.D. Cal. May 20, 2015) ............................... 7

*In re Netflix Privacy Litig.*,
  No. 11-cv-00379, 2013 WL 1120801 (N.D. Cal. March 18, 2013) .................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................................ 6, 8–11

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................................... 8

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................................. 6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ................................................................................................. 4

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................................. 8

*Rosado v. Ebay Inc.*,
  No. 5:12-CV-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ........................... 7

*Ruch v. AM Retail Grp., Inc.*,
  No. 14-CV-05352-MEJ, 2016 WL 5462451 (N.D. Cal. Sept. 28, 2016) ............................. 7

*Schuchardt v. Law Office of Rory W. Clark*,
  314 F.R.D. 673 (N.D. Cal. 2016) ........................................................................................ 11

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ................................................................................................. 7

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ....................................................................................... 7

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................................... 6

*Syed v. M-I LLC,*
    No. CV 1:14-742 WBS BAM, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016) ............... 9

*Watkins v. Hireright, Inc.,*
    No. 13-CV-1432-BAS-BLM, 2016 WL 5719812 (S.D. Cal. Sept. 30, 2016) ............. 9

**STATUTES**

15 U.S.C. § 1681. ................................................................................................................ 10

28 U.S.C. § 1715. ................................................................................................................ 11

**RULES**

FED. R. CIV. P. 23(e), ............................................................................................................ 6

## I.  INTRODUCTION

The Settlement represents an excellent result for the Class, and Plaintiff respectfully requests that the Court enter an order of final approval. As detailed extensively in the Amended Joint Motion for Preliminary Approval (Dkt. 102) and the Unopposed Motion for Attorneys' Fees, Expenses, and Class Representative Service Award (Dkt. 105), the Settlement is the result of contested litigation that culminated in a mediated settlement conference before Magistrate Judge Corley. The Court's preliminary approval order recognized the substantial benefits the Settlement conferred on Class Members, accounted for the risks of further litigation posed to the Parties, and approved for mailing the notice of settlement submitted by the parties (with a modification made to the release language). (Dkt. 103 at 2-5.)

The estimated cash payout to each Class Member is $180, higher than the $172 figure estimated at preliminary approval. This amount falls within the FCRA statutory damages range of between $100 and $1,000, and is more than Class Members might receive even if they had prevailed at trial. After the Court preliminarily approved the Settlement, class administrator American Legal Claims Services ("ALCS") mailed the Court-approved notice of settlement to the 4,360 identified Class Members (i.e., all but the three Class Members who opted out). After subtracting the requested attorneys' fees, expenses, service award, and costs of administration, the net payout to each Class Member would be approximately $180.24:

| **Settlement Fund** | **$1,090,750** |
|---|---|
| Requested attorneys' fees | ($272,687.50) |
| Requested litigation expenses | ($40,587.51) |
| Requested service award | ($1,000) |
| Requested costs of administration (ALCS) | ($16,581.66) |
| **Net Settlement amount (after requested deductions)** | **$759,893.33** |

| Net Settlement amount | Class Members[1] | Payment Per Class Member |
|---|---|---|
| $759,893.33 | 4,216 | $180.24 |

The Settlement is fair, reasonable, and an outstanding result for Class Members who would likely not otherwise receive anything. Class Counsel spoke to more than 95 Class Members by phone, and not one of them expressed any concern with the Settlement. Indeed, as of January 25 (six days after the January 19 deadline), no objections had been filed to the Settlement (or to Class Counsel's request for attorneys' fees, costs, and service award.). Taking all these factors into account, the Court should finally approve the Settlement.

### II.   SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT

The background of the case has been set out in detail several times by the Court's orders (Dkt. 103, 82, 60, and 22) and Plaintiff's motions (Dkt. 105, Motion for Attorneys' Fees, at 2-5; Dkt. 102, Amended Joint Motion for Preliminary Approval, at 2; Dkt. 65, Motion for Class Certification, at 2-7.) On December 29, 2016, Plaintiff filed a motion for award of attorneys' fees, costs, and service award. (Dkt. 105.) A very detailed description of the motion practice, discovery, assistance with class mailings, and other legal work performed by Class Counsel is set forth in that motion, which is set to be heard along with this Motion at the final approval hearing on February 6. (*See* Dkt. 105 at 2-5; Dkt. 106, 107.)

On November 4, 2016, the Court entered an order preliminarily approving the Settlement (Dkt. 103.) As also set forth in the Amended Joint Motion for Preliminary Approval, the key terms of the Settlement are as follows:

- **Class definition.** The Class is defined exactly the same as in the Court's certification order. (Dkt. 102 at 3; Dkt. 102-1 § 2.4; Dkt. 82 at 11.) There is thus no expansion of the Class, geographically, claim-wise, or person-wise, from the class certified by the Court. (*See id.*)

- **Common fund, distribution to Class Members, and *cy pres*.** Within ten business

---

[1] Despite its diligence, ALCS was unable to find addresses for 144 Class Members. Thus, the current number of Class Members stands at 4,216.


days of the Effective Date[2] of the Settlement, S2Verify will pay into an escrow account a common fund of $1,090,750.00 (the "Settlement Fund"). (Dkt. 102-1 § 2.23.) From the Settlement Fund, each Class member will receive an equal cash payment, payable by check (*Id.* § 8.2.) The awards of attorneys' fees and costs to Class Counsel and a service award to Hawkins, if any, will be paid out of the Settlement Fund. (*Id.* § 8.2.) The fees and expenses incurred by the Class Administrator will be paid out of the Settlement Fund. (*Id.* § 9.2.) Any amounts not distributed or collected, including uncashed checks, will be redistributed pro-rata to the Class Members who cash the initial settlement distribution checks within 60 days of issuance, less the cost of the redistribution, unless the amount remaining after deducting administrative costs is so *de minimis* (i.e., under $3.00 per Class Member) as to not warrant a second payment. (*Id.* § 8.2.)

If the Court approves, any remaining funds will then be distributed to the Volunteers of America, the *cy pres* beneficiary agreed upon by the Parties. (Dkt. 102 at 4; *See* Dkt. 102-1 § 8.2.) This organization, located in Oakland, CA (with offices in Sacramento, CA and Reno, NV), provides employment services to previously incarcerated persons. Their mission statement is stated as "stable employment is the key to long-term sustainability." (*See* https://www.voa-ncnn.org/community-re-entry-bay-area.) This organization provides services that could benefit the Class members, all of whom had some criminal history information on their consumer reports and were looking for gainful employment. (Dkt. 102 at 4.) Also, this is an organization located within this judicial district that would benefit directly from a *cy pres* award, and therefore could potentially assist other Class Members (or those who have experienced similar life obstacles to Class Members.) (*Id.*)

- **Release.** Upon the Court's final approval, Plaintiff and the Class agree to dismiss this case with prejudice, and release S2Verify from all FCRA claims under Sections 1681c and 1681n arising out of their consumer reports prepared by S2Verify. (Dkt. 102 at 4-5; Dkt. 102-1 § 10.2.) The release is narrow in that it includes only the claims that are still in the case, and hence subject

---

[2] The "Effective Date" is defined as the date of the Court's entry of the Final Approval Order, provided there are no objectors to the Settlement. As noted below, the deadline for objections has passed with no objections received, and so the Effective Date will be the date of the Court's entry of the Final Approval Order. (Dkt. 102-1 § 2.11.)

CASE NO. 3:15-CV-03502 WHA         – 3 –

to the Court's certification order. (*See* Dkt. 35 (First Amended Complaint); Dkt. 82 (Order Certifying Class); Dkt. 85 (Order Granting Stipulation dismissing Count I claims and retaining Count II and III claims).) Class members would retain any claims, including FCRA claims, that they might have against other parties. (*See* Dkt. 102-1 § 10.2.) *Cf. Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (upholding release of claims against parties not named as defendants).

There have been two separate mailings to Class Members in this case, both handled by the Court-appointed class administrator ALCS. The first mailing was the Notice of Class Certification (the "Initial Notice") approved by the Court, which ALCS mailed to the 4,363 Class Members on September 6, 2016. (Ex. 1, Declaration of Steve Platt ("Platt Decl.") ¶ 4; Dkt. 88.) The Initial Notice directed Class Members who wished to be excluded to mail their exclusion requests (opt-outs) to ALCS, with a postmark deadline of October 7, 2016. (Platt Decl. ¶ 5.) ALCS received only three opt-outs, which represents less than one tenth of one percent of the Class. (*Id.*).

The second mailing occurred after the Court preliminarily approved the Settlement. On November 22, 2016, ALCS mailed the Notice of Proposed Class Action Settlement and Final Approval Hearing ("Settlement Notice") to the 4,360 Class Members who did not file exclusion requests. (*Id.* ¶ 6.) The Settlement Notice mailed to Class Members complied with the Court's preliminary approval order, particularly the release language the Court directed the parties to modify from the previously submitted Notice. (*Id.*; Ex. 1-B, Settlement Notice; Dkt. 103 at 4-5.)

Of the 4,360 Settlement Notices mailed, 473 were returned as undeliverable by the USPS. (Platt Decl. ¶ 7.) ALCS received an additional two Settlement Notices that had forwarding addresses, and re-mailed those Settlement Notices to the forwarding addresses. (*Id.*) Additionally, ALCS submitted the 473 undeliverable addresses to a nationally recognized location service to obtain and update the Class Member's addresses. (*Id.*) As of January 25, 2017, ALCS had obtained updated addresses and re-mailed 336 Settlement Notices. (*Id.*) Of these 336 re-mailed Settlement Notices, seven were returned by the USPS as undeliverable. (*Id.*) No Class Members had objected to the Settlement as of the deadline to do so, January 19, 2017. (*Id.* ¶ 9.) As of January 25, 2017, the mailing of the Settlement Notices can be summarized as follows:

- Total number of Class Members: 4,360
- Total number initially mailed: 4,360
- Total number of mailed initial notices that were returned and processed, for which no forwarding or updated address was found: 137
- Total number of Settlement Notices re-mailed to updated addresses that were returned as undeliverable: 7
- Total number of Class Members for whom no good address can be found: 144
- Presumed Settlement Notice delivery rate: 96.7%

(*Id.* ¶ 8.). The size of the Class, based on the 96.7% of the Class Members for whom ALCS found a valid address, is 4,216. (*See id.*)

The Settlement Fund provides for a cash fund of $1,090,750 to be divided equally among all Class Members after any deductions for attorneys' fees and costs, service award, and costs of settlement administration awarded by the Court. (Dkt. 103 at 2, citing Dkt. Nos. 102 at 4, 8; 102-1 § 8.2.) In the Amended Joint Motion for Preliminary Approval, the parties estimated that the net payment to each Class Member would be approximately $172. (*See* Dkt. 102 at 8-9.) This was based on estimates of 4,363 total Class Members, litigation costs for Class Counsel of $42,002.77, and administration costs of the class administrator of $20,969. (*Id.*) But as noted above, the size of the Class is now estimated to be 4,216 (*See supra* at 4-5.) Further, the $40,587.51 in litigation costs sought by Class Counsel (Dkt. 105 at 13) and the $16,581.66 in costs of administration for ALCS of (Platt Decl. ¶ 11) are lower than the initial estimates. Therefore, if the Court awards each of the requested amounts for fees, expenses, and a service award, each Class Member will receive approximately $180. (*See* Dkt. 103 at 2; 102 at 8-9; 105 at 13; Platt Decl. ¶ 11; *supra* § I.)

### III. ARGUMENT AND AUTHORITIES

**A. The Court balances a non-exhaustive list of factors when determining whether the Settlement should be finally approved.**

To finally approve a class action settlement under FED. R. CIV. P. 23(e), the Court must find that the settlement is "fair, reasonable, and adequate," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

To assess the fairness of a settlement, the Court should balance "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004)). The factors "are not exclusive, and some factors may warrant more weight than others depending on the circumstances." *Akaosugi v. Benihana Nat. Corp.*, No. C 11-01272 WHA, 2013 WL 269083, at *1 (N.D. Cal. Jan. 24, 2013) (Alsup, J.) (citing *Officers for Justice*, 688 F.2d at 625.).

**B. ALCS, with the assistance of Class Counsel, has carried out the notice plan preliminarily approved by the Court.**

Rule 23(e)(1) requires "notice [of a class settlement] in a reasonable manner to all class members who would be bound by the proposal." While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice.

*Rosado v. Ebay Inc.*, No. 5:12-CV-04005-EJD, 2016 WL 3401987, at *2 (N.D. Cal. June 21, 2016) (Davila, J.); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). As this Court has recognized, "[i]n a majority of class actions at least some unclaimed damages or unlocated class members remain." *Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, No. C 13-05197 WHA, 2015 WL 2406966, at *1 (N.D. Cal. May 20, 2015) (Alsup, J.) (citing *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306 (9th Cir. 1990).).

The Court preliminarily approved direct mailing of the Settlement Notice submitted by the parties, with one change to the release language. (Dkt. 103 at 5; Ex. B to Platt Decl.) On its first mailing of the Settlement Notice, ALCS successfully reached all but 473 of the 4,360 Class Members. (Platt Decl. ¶7.) In order to locate as many Class Members as possible, ALCS submitted the 473 Settlement Notices that were returned as undeliverable to a nationally recognized location service. (Platt Decl. ¶ 7.) It successfully obtained addresses for, and re-mailed the Settlement Notice to, 336 of those Class Members. (*Id.*) Seven of those re-mailed Settlement Notices were returned as undeliverable. (*Id.*) In total, despite ALCS's diligent efforts in attempting to determine good addresses for every Class Member, ALCS was unable to determine a valid address for 144 Class Members (constituting the remaining 3.3% of the Class). (Platt Decl. ¶¶ 7-8.) Running undeliverable notice packets through a nationally known database as a last effort to locate class members is consistently recognized as satisfying the requirements of due process and Rule 23(e) for providing reasonable notice. *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016) (Tigar, J.) (finally approving settlement and recognizing notice plan was sufficient after notice packets were "skip-traced" as last resort for determining addresses of class members); *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 5462451, at *5 (N.D. Cal. Sept. 28, 2016) (James, J.) (granting final approval of settlement, and holding notice was sufficient when, after skip tracing, "8% of the 3,652 Notice Packets were deemed undeliverable.").

Here, administration of the mailing of the Settlement Notice was sufficient under Rule 23(e).

**C. The Settlement is fair, reasonable, and adequate, and the Court should approve it.**

**1. The Settlement is entitled to a presumption of fairness.**

As a threshold matter, the Settlement is entitled to a presumption of fairness. When a settlement is "a product of informed, arms-length negotiations," a presumption of fairness attaches. *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (Morrow, J.) (citing *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir.2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.")

For several reasons, the Settlement deserves the presumption of fairness. First, the parties did not discuss—let alone agree upon—the Settlement until after the Court had certified the Class. (*See* Dkt. 105 at 11; Dkt. 105-2, Declaration of Michael A. Caddell in support of motion for attorneys' fees, ¶ 37.) This was to ensure maximum compliance with the Court's Notice of Factors to be Evaluated for Any Class Action Settlement (Dkt. 11). Indeed, the Settlement itself provides that to the extent the Court found that the Settlement did not comply with Docket Number 11 in any respect, Docket Number 11 would control. (*See* Dkt. 102 at 8; Dkt. 105 at 11; Dkt. 102-1 § I.) Second, the Settlement resulted from more than a year of adversarial litigation between capable law firms, and was reached after a full-day mediated settlement conference before Magistrate Judge Corley. (*See* Dkt. 103 at 2-4; 102 at 8.) With that background, the Court should analyze the remaining factors for approval with the presumption that the Settlement is fair.

**2. The Settlement provides Class Members a cash award within the range of recoverable damages under the FCRA.**

The "amount offered in the settlement" factor favors final approval. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944. This factor is often cited as the "most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (Chen, J.).

The Settlement is an outstanding result for the Class. The Settlement provides for a cash fund of $1,090,750 to be divided equally among all Class Members after any deductions for attorneys' fees and costs, service award, and costs of settlement administration awarded by the

Court. (Dkt. 103 at 2, citing Dkt. Nos. 102 at 4, 8; 102-1 § 8.2.) In the Amended Joint Motion for Preliminary Approval, the parties estimated that the net payment to each Class Member would be approximately $172 (*See* Dkt. 102 at 8-9.) This was based on estimates of 4,363 total Class Members, litigation costs for Class Counsel of $42,002.77, and administration costs of the class administrator of $20,969. (*Id.*) But as noted above, the size of the Class is now estimated to be 4,216 (*See supra* at 5.) Further, the $40,587.51 in litigation costs sought by Class Counsel (Dkt. 105 at 13) and the $16,581.66 in costs of administration for ALCS of (Platt Decl. ¶ 11) are lower than the initial estimate. Therefore, if the Court awards each of the requested amounts for fees, expenses, and service award, each Class Member will receive approximately $180. (*See* Dkt. 103 at 2; 102 at 8-9; 105 at 13; Platt Decl. ¶ 11.)

This payment of $180 falls squarely within the range of recoverable damages under the FCRA. (*See* Dkt. 102 at 9; 15 U.S.C. § 1681n.) This payment per Class Member greatly exceeds that of recently approved FCRA class action settlements. *See, e.g., Watkins v. Hireright, Inc.*, No. 13-CV-1432-BAS-BLM, 2016 WL 5719812, at *1 (S.D. Cal. Sept. 30, 2016) (Bashant, J.) (final approval of FCRA settlement paying each class member $25.02); *Syed v. M-I LLC*, No. CV 1:14-742 WBS BAM, 2016 WL 310135, at *2 (E.D. Cal. Jan. 26, 2016) (Shubb, J.) (final approval of FCRA settlement paying each class member "approximately $16."). Further, Class Members will receive a higher amount than the estimated $172 for which the Court granted preliminary approval. (*See* Dkt. 103 at 2.) And as the Court recognized in its order certifying the Class, "[a]bsent a class action, individuals would be unlikely to pursue such a relatively small claim given the costs of litigation." (Dkt. 82 at 11.) Taking each of those together, the "amount offered in the settlement" factor favors final approval. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944.

**3. The parties reached the Settlement after the Court certified a litigation class, fact discovery had concluded, and the parties had extensively briefed legal issues.**

As the Court recognized in its order granting preliminary approval, the parties arrived at the settlement "after over a year of litigation and class certification," and did so with "the benefit of extensive discovery and briefing on relevant legal issues informing their considerations of the relative strengths and weaknesses of their legal positions." (Dkt. 103 at 2-3; *see also* Dkt. 105 at 2-5

(detailed background of discovery and motion practice). When the parties initially reached the Settlement on September 16, 2016, fact discovery had long closed. (*See* Dkt. 96, Joint Notice of Class Action Settlement; Dkt. 37 (providing for non-expert discovery deadline of June 30, 2016).) Essentially, at the time the parties reached the Settlement, all that was left to do was to try the case. The "extent of discovery completed and the stage of the proceedings" factor favors final approval. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944.

### 4. The risk of taking the case to trial favors approval of the Settlement.

As noted by the Court in its preliminary approval order, the proposed cash payout to Class Members "takes into account the risks of litigation." (Dkt. 103 at 2.) To prevail at trial, Plaintiff would have needed to prove S2Verify willfully violated the statute on a classwide basis. (Dkt. 102 at 9; 15 U.S.C. 1681n.). Although Plaintiff believes there was evidence of willfulness, it was by no means guaranteed that a jury would find in the Class's favor on that issue. (*See* Dkt. 102 at 9.) Even if the jury did find in the Class's favor on willfulness, the jury might have awarded statutory damages in an amount less than what the Class will ultimately receive if the Court approves the Settlement. (*See id.*) And even if the Class obtained a favorable judgment, there was no guarantee that a judgment would be collectible. Conversely, S2Verify faced the possibility of significant exposure if the jury were to award statutory damages up to the statutory maximum of $1,000 per violation. (*See id.;* 15 U.S.C. 1681n.) The great unpredictability and risks posed by a trial (and potentially a subsequent appeal), to both the Plaintiff and S2Verify, favor approval of the settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944.

### 5. The experience and views of Class Counsel favors approval of the Settlement.

As demonstrated by their previous declarations, and as briefed in further detail in the pending motion for attorneys' fees (Dkt. 105), Class Counsel are highly experienced in class-action and Fair Credit Reporting Act litigation.[3] Class Counsel view this as an excellent settlement. (*See*

---

[3] Class Counsel have submitted multiple previous declarations in this case setting forth their experience in class action matters, including FCRA cases. (*See* Dkt. 105-2, declaration of Michael A. Caddell in support of motion for attorneys' fees and service award, ¶¶ 11-28; Dkt. 65-7, Caddell declaration in support of class certification, ¶¶ 10-17; Dkt. 105-6, declaration of Devin Fok in support of motion for attorneys' fees and service award, ¶2; Dkt. 65-8, Fok declaration in support of class certification.)

Dkt. 105-2 ¶¶ 38-40). This factor weighs in favor of final approval of the Settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944; *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011), *aff'd in part,* 473 F. App'x 716 (9th Cir. 2012) ("The recommendations of counsel are given great weight since they are most familiar with the facts of the underlying litigation.")

### 6. No Attorneys General objected to the Settlement.

In accordance with the Court's Preliminary Approval Order, notices of the Settlement were mailed to the Attorney General of the United States and the Attorneys General of each of the 43 states in which a Settlement Class member resides, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (Platt Decl. ¶ 12.) No Attorneys General object to the settlement. (*Id.*) This factor also favors approval. *See, e.g., Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) (Corley, J.) ("While there is no governmental entity party to this action, neither state nor federal officials lodged any objection after receiving notice of the Settlement Agreement. Thus, this factor favors the Settlement Agreement.")

### 7. Class Members' positive reaction supports final approval of the Settlement.

Finally, the positive response from Class Members supports the Settlement. Only three of the 4,363 class members—constituting less than one tenth of one percent—opted out of the Class. (Platt Decl. ¶ 5; Ex. B to Platt Declaration.) As detailed above, for the 4,360 Class Members who did not opt out, ALCS successfully mailed the Settlement Notice approved by the Court to approximately 96.7% of the Class. (Platt Decl. ¶¶ 6-8; Ex. B to Platt Decl., Settlement Notice.) Class Counsel established a website that included all pertinent pleadings, motions, orders, and a copy of the Settlement Agreement with its exhibits. (Ex. 2, Declaration of Benjamin Wickert ("Wickert Decl.") ¶ 3; Settlement Notice ¶ 8.) Class Counsel fielded at least 95 phone calls from Class Members, answering their questions and, if appropriate, passing along updated address information to ALCS. (Wickert Decl. ¶ 4.) Most of the calls from Class Members simply involved questions about why they were receiving the Settlement Notice, what, if anything, they needed to do to obtain any benefits, or that they wanted to provide an updated mailing address. (*Id.* ¶ 4.) Of those callers, none expressed any concerns, objections, or dissatisfaction with the Settlement. (*Id.*) As of January 25, 2017, the deadline for objecting to the Settlement, no Class Members had

objected. (Dkt. 103 at 4; Platt Decl. ¶ 9.)

The minuscule number of opt-outs and the absence of a single objection favor approval of the Settlement. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 1120801, at *8 (N.D. Cal. March 18, 2013) (holding that low rates of opt-outs and objections weighed in favor of settlement approval).

### IV. CONCLUSION

Plaintiff respectfully requests that the Court enter an order that finally approves the Settlement, and grants an award of attorneys' fees, costs, a service award (as detailed in Dkt. 105), and costs of administration.

Respectfully submitted,

Dated: January 26, 2017

By: */s/ Michael A. Caddell*
Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Amy E. Tabor (State Bar No. 297660)
aet@caddellchapman.com
Benjamin C. Wickert (*pro hac vice*)
bcw@caddellchapman.com
Caddell & Chapman
628 East 9th Street
Houston, TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Devin H. Fok (State Bar No. 256599)
devin@devinfoklaw.com
DHF Law
234 Colorado Blvd., 8th Floor
Pasadena CA 91101
Telephone: (310) 430-9933
Facsimile: (818) 484-2023

*Attorneys for Plaintiff*